44 So.2d 732 (1950)
GAGLIANO
v.
BOH BROS. CONST. CO. et al.
No. 19224.
Court of Appeal of Louisiana, Orleans.
February 27, 1950.
Clay & Coleman and Louis J. Dutrey, New Orleans, for plaintiff and appellee.
John May and John E. Hurley, New Orleans, for defendants and appellants.
McBRIDE, Judge.
The plaintiff, Anthony Gagliano, Sr., whose occupation was that of a member of a pile driver crew, which is a hazardous occupation within the purview of the Workmen's Compensation Act, Act No. 20 of 1914, as amended, brought this suit against his employer, Boh Bros. Construction Company, and its compensation insurer, Travelers Insurance Company, seeking to recover workman's compensation at the maximum rate of $20.00 per week, for permanent total disability, allegedly resulting from an injury to his back sustained on his job on February 25, 1948.
Defendants answered denying that plaintiff suffered an accident while in the employ of Boh Bros. Construction Company on February 25, 1948. The answer avers that the Travelers Insurance Company had paid compensation to plaintiff from April 12, 1948, to June 2, 1948, a period of seven weeks and two days, at the rate of $20.00 per week, or an aggregate amount of $148.00. Defendants deny that plaintiff is disabled or that he is entitled to further compensation.
After a trial on the merits, which consumed several court days, plaintiff recovered judgment against defendants, jointly and in solido, for the sum of $6,000.00, representing compensation for permanent partial disability at the rate of $20.00 per week for *733 a period of 300 weeks under section 8(1) (c) of the act, Act No. 242 of 1928, p. 357, § 8, subd. 1(c), subject to a credit of $148.00, the compensation paid for seven weeks and two days at the rate of $20.00 per week, together with legal interest from date of judicial demand, and costs.
Defendants have appealed suspensively, and the matter is now before us for consideration. An answer to the appeal was filed by appellee who prays that the judgment be amended so as to increase the award from $20.00 per week for a period of 300 weeks, to $20.00 per week for a period of 400 weeks.
Diligent counsel have filed comprehensive briefs, and the case was extensively argued. Certain motion pictures, which were offered in evidence below, were exhibited to us, on which we shall comment later in this opinion.
Prior to argument, defendants moved to remand, upon the ground that additional evidence has been discovered which was not available to them on the trial of the case, and which, they allege, will conclusively prove that plaintiff is not now disabled, nor was he when the matter was heard below. Attached to the motion are some blown-up still photographs made from motion pictures taken some months subsequent to the date of the trial by investigators employed by defendants, which pictures, the motion alleges, depict plaintiff in the act of performing manual labor, which fact makes it manifest that his claims of disability are false, fraudulent, and colored with perjury.
We informed counsel, when the motion to remand was urged, that a ruling thereon must await our consideration of the case on the merits, because when an appellate court remands a cause, a reversal of the judgment is necessary, and this the court cannot do without first considering all evidence embraced by the record. See Blackburn v. Chenet, La.App., 42 So.2d 288.
This appeal presents two questions. Did the plaintiff suffer an accident at the time alleged while in the employ of Boh Bros. Construction Company? If so, is the plaintiff disabled and to what extent?
At the outset, we might state that plaintiff is a man about 33 years old, and while the record does not show what, if any, education he has had, we gather from his testimony that he is a person with little or none.
The petition alleges that the accident occurred on February 25, 1948. It is true that Gagliano was confused and vague as to when the accident happened, but after a careful consideration of all the testimony on that point, our minds are free of doubt that he did meet with an accident on or near the alleged date. He testified that while working in a skiff near the seawall along Lake Ponchartrain, at the site of a metal breakwater being then constructed by Boh Bros. Construction Company, in attempting to shove the skiff off by pushing with both hands against the steel pilings, he lost his equilibrium and hyperextended and twisted his back in an attempt to regain his balance, and then fell to the bottom of the skiff. Plaintiff, qualifying his statement with the admission that he might be "a little wrong," said the accident occurred on February 25, 1948. In a prior written statement given to an adjuster for the compensation carrier, he stated that the accident took place during the first week of March, 1948. At another point, Gagliano testified that he saw Dr. Tedesco three days after he was injured; the record shows that he first saw Dr. Tedesco on April 12, 1948. Again, he testified that he visited Dr. Baker about four or five days after the accident; his first visit to this physician was on April 13, 1948.
Chaney, a fellow workman of Gagliano, testified that to the best of his knowledge the accident occurred in February, 1948. However, the witness did not see the actual occurrence. Heberling, another fellow workman, who at the time of the trial below was still in the employ of Boh Bros. Construction Company, saw Gagliano fall in the skiff. The accident, he said, occurred some time during February, although he could not fix the exact date. Heberling, who at the time was "lead" man on the job, as the foreman was sick, stated that when Gagliano reached shore he told *734 him, in the presence of several members of the gang, that he believed he had injured himself.
Gagliano's testimony appears to be honest, but, nevertheless, we find ourselves at a loss to know when the accident happened. However, we do not believe that the failure to fix with precision the date of the accident can go far toward militating against a workman's claim to compensation, where it can be established that there actually was an accident, as such detail, in our minds, is relatively unimportant. However, it might be very material in evaluating the credibility of the claimant and of his witnesses, or when the defendant has interposed a plea of prescription. There is no such plea in this case.
It is the settled law, in ordinary cases, that the allegata and the probata should conform, but by specific provisions imbedded in the Workmen's Compensation Act the usual rules which govern ordinary cases are relaxed, and the parties are not to be bound by technical rules of evidence or procedure. In all jurisdictions, these statutes have been said to be paternal in their nature.
The record is fraught with irreconcilable conflict in the testimony of the five physicians who testified, all of whom, although prominent in their profession, were diametrically opposed in their views and opinions. Two doctors testified for Gagliano, and the defendants produced three. In addition to his experts, plaintiff placed into the evidence a certified copy of his Charity Hospital record, which, under the terms of Act No. 90 of 1938, constitutes prima facie proof of its contents.
Gagliano states that upon falling in the skiff he experienced sudden sharp pains in his back, but, nevertheless, continued working. A few days later, he claims he met his regular foreman, whom he saw in his neighborhood, and told him he would not be able to do "that roughneck stuff" because his back hurt. On the following Monday, Gagliano was assigned to light work operating a burner, which he continued to do until about April 12, 1948, when he called upon his private physician, Dr. Victor E. Tedesco. Subsequently, he was examined by several other physicians, and was treated by some of them.
Drs. Tedesco and E. H. Maurer appeared as witnesses for plaintiff, and Drs. Dan D. Baker, George D. B. Berkett, and Howard H. Karr appeared as defense witnesses.
Plaintiff's medical experts, while insisting that he was totally and permanently disabled, could not agree as to the nature of his complaints. Dr. Tedesco was of the opinion that Gagliano had a ruptured intervertebral disc, while Dr. Maurer diagnosed the case as a lumbo-sacral strain.
Dr. Berkett treated plaintiff until June 1, 1948, on which date plaintiff was discharged from further treatment. Drs. Baker and Karr merely examined plaintiff. These three physicians were of the opinion that Gagliano was laboring under no disability and was physically competent to return to his occupation as a pile driver worker.
The records of the Charity Hospital do not help to any extent. They merely show that Gagliano was treated in the orthopedic clinic several times, and that the doctors were of the opinion that there was no ruptured intervertebral disc. However, the records do not reveal the diagnosis.
For several days prior to Sunday, October 17, 1948, which date was eleven days before the trial was scheduled below, Gagliano was followed by two investigators employed by the Travelers Insurance Company. One of these, J. C. Isaac, testified that on October 17, 1948, he observed Gagliano at 1440 Gallier Street from eight to ten o'clock in the morning, sweeping the sidewalk with a broom and shoveling dirt from in front of the house. He took four rools of motion picture film, consisting of fifty feet each, of the activities of Gagliano as observed by him. At ten o'clock Isaac was joined by the other investigator, Jastram, and from 10:30 to noon they both observed Gagliano digging a hole with a posthole digger, using a shovel to remove dirt, swinging a pickaxe, and erecting a post in the hole which had been dug. Jastram also made pictures of these activities of *735 Gagliano, consisting of three rolls of fifty feet each.
The films were viewed by us, and by statement of the operator of the projecting machine, about twenty minutes were consumed in exhibiting them. As said before, the pictures were made between eight o'clock and noon of the day in question, and, of course, they do not show all of Gagliano's activities during that time.
None of the medical experts saw an exhibition of the films, and the only comment concerning the pictures, aside from that of the two investigators, was given by Gagliano, who freely admitted that he did the work at 1440 Gallier Street on that day. He explained that the premises are owned by his brother-in-law, to whom he was indebted for loans of money, etc., and that he went there on the Sunday morning in an effort to show his appreciation by gratuitously helping his brother-in-law clear debris from about the house and grade the yard. According to Gagliano, he did not work steadily, was compelled to rest from time to time, and experienced pain to such an extent that on the following day it was necessary to take to his bed.
Objection was made by plaintiff's counsel, in the court below, to the admission of the pictures as evidence, but we do not deem it necessary to comment or pass upon the objection. Suffice it to say that whereas the motion pictures were taken at intervals, they lose much of their potency, as we believe a spirit of fair play dictates that when such pictures are made to be used in a case such as this, they should reflect all activities of the subject of the pictures, and not merely snatches or fragments taken over the four hour interval.
However, the pictures, as they are, nonetheless shroud the validity of plaintiff's claim with doubt. While proclaiming from the witness stand that he could not stoop, bend, or do laborious work, the pictures show him doing those very things which he insisted he could not do. We do not have the benefit of medical testimony regarding Gagliano's activities as shown by the pictures, and are at a loss to know whether such activities were in anywise incompatible with the nature of the complaints upon which his claim is based.
It might be mentioned here that none of defendants' expert witnesses would classify Gagliano as a malingerer, and taking the medical testimony as a whole, to all of which we have given careful study and attention, together with the moving pictures, at this time some doubt exists in our minds, because of the state of the record, as to what disposition should be made of the case. The trial judge evidently entertained doubt, because while Gagliano claimed total permanent disability, the judgment appealed from awarded him compensation for total partial disability.
The motion to remand, in part, alleges: "That this case was tried in the lower court on November 18th, November 22nd, November 29th, November 30th and December 1st, 1948; that at the time of the trial plaintiff testified that he was wholly disabled by reason of back injuries; that he was obliged to wear a surgical belt at all times; that he could not lift anything or stoop without pain; that he was unable to do any bending, stooping, lifting or any hard work; that the only work he had been able to do since April 12, 1948 was that of shoe repairing, and, further, that he had not done any hard labor at all since April 12, 1948; that he suffered from continual pain in his back; all as will appear from the transcript herein. That, from the 4th day of April, 1949 through the 9th day of April, 1949, approximately four months after the trial, plaintiff was observed by several witnesses working first at 3826 Burgundy Street and then at Schwegmann Bros. Super Market, in the City of New Orleans, using a pipe cutter, threading pipe, handling pipe and material, swinging a pick ax, using a shovel to dig a trench and generally performing labor which required great physical exertion, especially bending, turning, stooping and lifting; that this work was performed for hours over a period of days; that the performance of said work was entirely inconsistent with plaintiff's alleged disability and proved conclusively that plaintiff's claims of disability at the time of the trial were false, fraudulent *736 and perjured; that eighteen rolls of motion pictures were made of plaintiff's activities on April 4th, 6th, 7th, 8th and 9th, 1949; that still photographs were made from the motion picture films, which stills are attached to this motion together with affidavits of Milton M. Jastram, Samuel J. Lyons and J. E. Isaac, witnesses to the plaintiff's said activities, and of Nestor B. Knoepfler, the photographer who made the still photographs; that also attached to this motion is affidavit of Joseph D. Vinson relative to the development of the eighteen rolls of motion picture film; that the said motion picture films are available and should be viewed in whole or in part by this Court so that the character of the evidence and its conclusiveness as to plaintiff's disability at the time of the trial may be demonstrated."
The still pictures attached to the motion purport to depict plaintiff performing such manual tasks as stooping, digging a trench with a shovel, swinging a pickaxe, and working at a pipe vise, and if the new evidence is such as the motion alleges, then the additional moving pictures taken subsequent to the trial of the case below might possibly be of material benefit in arriving at a conclusion. This exact situation existed in the recently decided case of McClung v. Delta Shipbuilding Co., La.App., 33 So. 2d 438, 442, writs refused by the Supreme Court, wherein, in remanding the case, we said: "While it is quite true that the Code of Practice contains no article which specifically endows an appellate court with authority to remand a case for the reception of new evidence, courts have continuously exercised such power when a litigant has procured evidence which is material to his interest, and which he could not, with due diligence, have obtained before. Robison v. Howell, 22 La.Ann. 524; Union National Bank v. Evans, 43 La.Ann. 372, 9 So. 44; Succession of Oliver, 1 La. App. 526. Moreover, an appellate court should remand a cause whenever the nature and extent of the proceedings require it, and such action is largely within the court's discretion, and should be exercised according to the peculiar exigencies of the particular case. This is especially true when such action is consonant with the ends of justice. Buffalo Specialty Co. v. G. Pitard's Sons, 14 Or.App. 395; Brasher v. Grant, 1 La.App. 457; Schneider v. Etna Life Insurance Co., 30 La.Ann. 1198; Keller v. Keller, 4 Or.App. 309; Mayer v. Barrow, 182 La. 983, 162 So. 748."
The photographs attached to the motion indicate that this cause is a proper one for remand, in order that the court might have the benefit of such additional evidence respecting the nature and extent of plaintiff's disability. We believe that on the retrial of the case both parties should be given a full opportunity to present any competent evidence respecting those questions.
It is ordered, adjudged, and decreed that the judgment appealed from be reversed, and it is now ordered that this cause be remanded to the lower court for the reception of any and all competent evidence respecting plaintiff's disability, its extent and duration, in order that the trial court might adjudicate the matter on the basis of the evidence heretofore taken and also upon the basis of any new evidence the parties might see fit to introduce. All costs of the lower court, as well as the costs of this appeal, are to await the final determination of the matter
Reversed and remanded.