CHASEZ, Judge.
Jack Franklin, a laborer, petitioned the Civil District Court for Workman’s Compensation benefits on December 21,1965, alleging that he was entitled to $35.00 per week, not to exceed 400 weeks, beginning from June 28, 1965, when he sustained severe injuries to his right elbow and to his back in the course and scope of his employment with King and Company, Incorporated, while carrying some sheetrock with a fellow workman. Named defendant was the Insurance Company of North America, who insured Jack Franklin’s employer.
After trial the Court rendered judgment in favor of the defendant, dismissing the plaintiff’s suit, stating in his reasons which were dictated into the record, that the plaintiff failed to show that the injury and accident which he suffered occurred in the course and scope of his employment. Further, the Court concluded that no disability was proven as a result of the alleged injury. From this judgment the plaintiff appeals.
The plaintiff and two witnesses testified that the accident occurred at the Cotton Exchange Building in New Orleans. Jack Franklin stated unequivocally that it occurred on June 28, 1965. Earl Harris testified that it occurred in the “latter part of June, 1965”. He stated he was the party carrying the sheetrock with Jack Franklin. Kemper Brown testified he was present when the accident occurred, and that it happened in June, 1965.
The record indicates that the nature of the witnesses’ employment with King and Company was sporadic. Earl Harris testified that he continued working with King and Company for about a month and a half, or two months after the plaintiff’s accident. Kemper Brown said he stopped working with the Company late in 1965.
When the defendants presented their case they introduced evidence to show that the accident could not have happened at the time stated. The pertinent daily work record of the company (which accounted for all jobs except deliveries) and the payroll records, which would account for all jobs, were introduced into evidence and revealed that Jack Franklin did not work on June 28, 1965, and had not worked at the Cotton Exchange since May 27th and 28th, 1965, and that Kemper Brown worked there on May 27th and 28th, 1965, and Earl Harris worked there on May 27, 1965. The payroll supervisor stated, as records further showed, that Earl Harris’ last working day with the Company was June 2, 1965 and Kemper Brown’s last day was June 23, 1965.
The plaintiff argues that his case has been proved with sufficient certainty since the plaintiff should not be held to strict accountability for his dates and the three men actually did work at the Cotton Exchange on May 27th. However, the plaintiff not only confused his dates, but the two witnesses did also, and Earl Harris stated that the accident occurred at a time when he was not even working for the Company, since his employment terminated on June 2, 1965. And even if we were to overlook the fact that all three men were in error as to the date of the accident, there still is a discrepancy between the witnesses’ statement of when they terminated their employment with the Company and the time they actually did, regardless of whether the date of the accident be taken as in May or June.
This situation then is markedly different from those in Gisevius v. Jackson Brewing Co., 152 So.2d 231 (La.App.1963); Ortego v. Southern Industries Co., 88 So.2d 73 (La.App.1956); Gagliano v. Boh Bros. Const. Co., 44 So.2d 732 (La.App.1950) where the discrepancies concerning the time of injury were more readily explainable than here.
It is also noteworthy in this connection that the plaintiff omitted to mention the name of Earl Harris, who was helping him cary the sheetrock, as a witness during the taking of his deposition prior to trial.
A motion to remand has been filed in this Court by the plaintiff-appellant for the purpose of the taking of additional evidence, the testimony of one Alex Ander Anderson, who supposedly was the only *159 other eyewitness to the accident. His affidavit states that he does not know the exact date of its occurrence. The brief of plaintiff asserts that the witness was not called by the plaintiff at the trial since he was still employed by the defendant and thus the latter should bear the presumption that the witness’s testimony would have been adverse to its position. We do not accept this argument. The burden of proof was upon the plaintiff and the knowledge of this witness’s existence was in his possession at the time of trial, much more so than in the possession of the defendant. This witness should have been called by the plaintiff at the time of trial, and there is no reason why this case should be remanded at this late date, since there was no valid reason why he could not have been presented heretofore.
We believe that it should be noted here that in the District Court the plaintiff was ably represented by counsel other than counsel who presented the case to this Court. Apparently plaintiff’s counsel did riot believe it necessary to examine the witness, Anderson, in the presentation of his case.
The motion filed in this Court to remand the case is denied.
We think, as did the trial Court, this disposes of the case, but we will also briefly review the medical evidence adduced on the trial.
Doctor Richard Faust, a general surgeon, was the first to see the plaintiff, on July 16, 1965, and six times thereafter, ending August 17, 1965, at which time the plaintiff unilaterally discontinued treatment under him. Except for the last visit, the plaintiff’s elbow was aspirated of fluid and injected with medication, the diagnosis being olecranon bursitis, which is a swelling of the olecranon bursa, in the vicinity of the elbow joint. Doctor Faust found no disability of the plaintiff, although he admitted that the recurrence of fluid in the bursa indicated that he may have been bumping it, and he did not know whether this would be occasioned by his employment or not. Since the plaintiff did not so indicate he gave him no disability. As a matter of fact, the plaintiff discontinued working on August 2, 1965. At the last visit, August 17, 1965, Doctor Faust concluded that the ailment was being cured since there was no fluid to be aspirated.
Having mentioned a back complaint to Doctor Faust for the first time on August 10, 1965, he was sent to Doctor Irving Red-ler, but through error wound up in the office of Doctor Louis Ensenat, a general surgeon, who treated him on August 20, 1965 and thereafter through November 10, 1965, when he operated on the plaintiff and removed the bursa. The plaintiff was also seen by Doctor Ensenat after this operation.
The plaintiff eventually did see Doctor Redler, an orthopedic surgeon, on August 27, 1965, September 17, 1965, and June 9, 1966. From his examination of August 27, 1965, Doctor Redler concluded that the bursitis had subsided. He felt that the plaintiff was fit for work, and the same conclusions were reached on the plaintiff’s second visit. He had found no residual disability of the back as a result of his examination.
On the occasion of Doctor Ensenat’s first examination, August 20, 1965, the doctor estimated that the post-traumatic olecranon bursitis would necessitate the plaintiff’s remaining away from his job for only three days. However he found that the condition of the bursa (and what he diagnosed as severe lumbosacral strain of the back) had become aggravated. He saw the plaintiff some 52 times before the November operation and his treatment consisted of diathermy, and the prescribing of analgesic and muscle relaxant medication. The doctor’s findings conflict with Doctors Redler and Faust in that he considered the plaintiff disabled until February 14, 1966, when he felt that the plaintiff would be able to return to his regular work within the next ten days. Doctor Ensenat testified that the operation revealed indications of chronic inflammatory reaction of the bursa. He further stated that a person is unable to do laboring work with traumatic olecranon bursitis because motion itself was trauma, which causes the bursitis to become chronic. He *160 also found after his final examination of May 16, 1966 that the plaintiff had a limitation of full active extension of the right arm of 10 degrees and that any extension beyond 170 degrees would cause the plaintiff to experience mild pain. Doctor Redler had also found some limitation of full extension, but felt this was not an abnormality, and contrary to Doctor Ensenat, found it present in both arms.
In view of the entire record, and the medical evidence summarized with the reasons of the lower Court:
“With these findings, it appears unnecessary to go into the medical testimony adduced; however, the Court for the purposes of the record, would like to make certain observations with reference to the medical testimony. Assuming that the plaintiff was injured in the latter part of May, instead of June of 1965, plaintiff has further failed to establish that he was in any way disabled from performing his employment or the work for which he was hired. Examining his particular complaints, first with reference to his back, as counsel stated during the argument, the back injury must have been of a very minor nature since the plaintiff continued to work from the latter part of May until August 2nd, without any complaint of his back, whatsoever, and did not even complain of his back when he first went to a doctor on July 15th, 1965. His first complaint of any pain in his back was on August 10th and that was approximately two and a half months after the accident when the plaintiff continued to work during that entire two and a half months without any complaint whatsoever. The sole injury upon which the plaintiff bases his claim is the injury to the elbow. There is no doubt that plaintiff was complaining and did suffer from a bursitis condition of the elbow. There is however grave doubt that that condition was caused by any accident during the course of employment. But even assuming that it was, the condition was being treated by Dr. Faust during the time that the plaintiff was working and it appears to this Court, from all of the medical testimony adduced, that the bursitis condition was cured, certainly eliminated by the time that the plaintiff was examined on August 27th, by Dr. Redler. Particular attention must be directed first to Dr. Faust’s testimony to the effect that this condition was being cured, and would have been cured without any difficulty; secondly, to Dr. Ensenat’s testimony, particularly his first report of the plaintiff’s visit, wherein he stated that it was his opinion that the plaintiff would be able to return to work within three days. And although Dr. Ensenat’s testimony as a whole was not clear to this Court, it would appear that he did continue to treat the plaintiff for his elbow condition, but that that treatment did not necessarily prevent the plaintiff from continuing his work in the normal course and scope of his employment. Certainly, we must pay particular attention to Dr. Redler’s testimony, who examined the plaintiff on August 27th, 1965, only seven days after Dr. Ensenat had examined him and given him three days in which to return to work. And on that examination Dr. Redler found that there was no swelling whatsoever at the elbow, and no complaints of pain. And he felt that the elbow condition was good.
“From all of the foregoing findings, the Court will conclude that the plaintiff has failed to prove the fact that an accident did occur in the scope and during the course of his employment, which caused the injuries complained of, and secondly that he failed to prove that he was disabled as a result of any injury which he suffered. Accordingly there will be judgment in favor of the defendant, the Insurance Company of North America, and against the plaintiff, Jack Franklin, dismissing plaintiff’s suit at his cost.”
The judgment is affirmed; costs of this appeal are to be borne by the plaintiff-appellant.
Affirmed.