WIGGINTON, Judge.
Claimant brings this appeal from the order of the judge of compensation claims in part denying his claim for adjustment of his average weekly wage and compensation rate. For the following reasons, we reverse that contested portion of the order and remand for further proceedings.
At the time of his industrial accident, claimant and his wife each held 50 percent of the stock of the employer corporation. Claimant’s wife was employed as the office manager and bookkeeper and received a salary for her duties. Claimant was employed as a master tile setter and manager of the company, and also received a salary. In the 13 weeks preceding the industrial accident, claimant worked an average of 75 hours per week in this capacity and participated in every job in which the company was involved, in either his supervisory capacity or directly by his employing his tile setting skills.
The evidence indicates that claimant started his business with a $2,000 personal investment. The company’s CPA, John Henry Smith, hired to audit the business records, found there were no other monies invested.
Gross earnings during the 13 weeks preceding the injury, less expenses, amounted to $35,099.72. Included in expenses was claimant’s $300 per week salary as reported to the Internal Revenue Service, the company’s workers’ compensation self-insured fund, the Social Security Administration, and the state unemployment officials. Claimant’s wife received the same salary. However, in addition, claimant received “corporate distribution” checks which, by his claim, he sought to have included in his average weekly wage.
Claimant initially brought this action to recover workers’ compensation benefits and to have his average weekly wage recalculated as indicated above. The instant appeal challenges only that portion of the JCC’s order rejecting claimant’s “allegation” that all or a portion of the profits earned by the corporation in the 13 weeks preceding the accident should be includable in his average weekly wage. The JCC rejected this proposition on the basis that the
... corporate profits represented by corporate distributions were received solely by virtue of Claimant’s status as part owner of the employer corporation. No testimony was presented, either lay or expert, that show that the corporate distributions or profits were provided to the Claimant in consideration for his employment with Pishotta Tile and Marble. The only expert testimony presented, that of John Henry Smith, C.P.A., who I find to be a credible and highly knowledgeable expert, was that the Claimant’s salary in the thirteen weeks prior to the industrial accident was $300 per week. Mr. Smith testified that the only factor used in determining corporate profits and corporate distributions disbursed to owners of the corporation was ownership in the corporation. I specifically reject the Claimant’s allegations and testimony that the average weekly wage should include a portion of the net corporate profit earned in the thirteen weeks prior to the industrial accident by the corporation. The calculations presented by Claimant on direct testimony assumed that the only input into the corporate profits were the labors of he and his wife. I specifically reject this contention as the Claimant testified, as did his wife, that there were other employees in the corporation and that profits were made on things such as resale of materials. Claimant failed to present any competent, substantial evidence that the average weekly wage should be changed.
In urging reversal, claimant points to evidence indicating that during the relevant 13 weeks preceding his injury, claimant participated in every job the company had going in either his supervisory capacity or by employing his tile setting skills. He also testified that the going rate for a master tile setter ranged anywhere be *1375 tween $35 to $100 an hour, and that when he bid his jobs, he allowed $35 to $45 an hour for his skills. In contrast, the JCC’s finding that claimant’s average weekly wage was $300 per week, in light of claimant’s undisputed testimony of his working 75 hours per week, resulted in an hourly rate of $4.00, or $15,600 per year. Claimant argues that such a result fails to recognize his hours of work as a master tile setter and his personal management of the business.
Claimant also points to John Henry Smith’s testimony noting that Smith could not attribute earnings of the business flowing to claimant simply due to his ownership status. Indeed, Smith testified he could not tell whether any of the other employees were profitable to «the business, nor could he testify whether there were any earnings resulting from the sale of material. Moreover, when asked whether claimant’s .receipt of corporate distributions was to be considered as fair remuneration for the work he performed, Smith replied, “That’s really ... a judgment call,” and observed that the Pishottas, in their capacity as sole shareholders in the corporation, had the right to decide when and when not to pay salaries.
The statute applicable to the instant case, section 440.14, Florida Statutes (1985), provides in subsection (l)(a) that the average weekly wage of the injured employee at the time of the injury shall be computed based on the total amount of wages earned in the employment during the 13 weeks preceding the injury. In turn, section 440.02(21) defines “wages” as “the money rate at which the service rendered is recompensed under the contract of hiring.” Thus, “wages,” as utilized in section 440.14 for purposes of establishing an average weekly wage, measures the claimant’s pre-injury earning capacity to be thereafter compared to what the claimant is able to earn following his injury.[1] Thus, the relevant focus is on how a claimant is recompensed for his or her direct efforts of personal management and endeavor, and not simply the wages a claimant is actually paid.
Accordingly, “[a] determination of whether corporate profits should be considered in the computation of average weekly wage ... is based on a factual evaluation of the record.” Rios v. Fred Tietelbaum Construction, 528 So.2d 1293 (Fla. 1st DCA 1988). The principle of law applicable here is that “ ‘where a claimant ... is the sole or primary owner of the business from which he seeks compensation benefits, monies received by virtue of his status as owner ... will not be characterized as “earnings” or “wages” for purposes of determining his entitlement to benefits.’ ” MDM Marble Company v. Jackson, 512 So.2d 305, 306 (Fla. 1st DCA 1987), quoting from H.G. Boddiford Painting Contractors, Inc. v. Boddiford, 426 So.2d 1243, 1246 (Fla. 1st DCA 1983) (emphasis in original). However, an exception to this rule exists where the evidence establishes that the business profits are “almost entirely the direct result of personal management and endeavor.” MDM Marble Co., 512 So.2d at 307. See also Perini Corporation v. Licata, 548 So.2d 815 (Fla. 1st DCA 1989); Rios v. Fred Tietelbaum Construction.
As was true in MDM Marble Co., “the conclusion is inescapable” in the instant case that claimant was not receiving his company’s profits merely because of his status as owner; rather, the profits were derived almost entirely as the direct result of his personal management and endeavor. Thus, the JCC’s finding that the corporate profits represented by the distributions were received solely by virtue of claimant’s status as part owner of the corporation was not based on competent and substantial evidence.
Moreover, to the extent the JCC rejected claimant’s allegations that his average weekly wage should include a portion of the net corporate profits on the basis that *1376 there were other employees in the corporation, and that these profits were made on such things as the resale of materials, the JCC misapprehended the law. Rather than working to deny a claimant the right altogether to include a portion of the corporate profits in his or her average weekly wage, evidence showing that a portion of those profits may be fairly attributable to the labor of other employees and/or the sale of materials would act merely to reduce proportionately that portion of the corporate profits that may be allocated to the claimant’s efforts.
Based on the foregoing, we reverse the JCC’s order on review to the extent it denies claimant’s claim for adjustment of his average weekly wage, and remand for further proceedings on this matter. We note that claimant has the burden of initially going forward with the necessary proof of establishing what portion of the corporate profits is fairly attributable to his personal management and endeavor. The JCC may consider further evidence on this point if necessary.
REVERSED, in part, and REMANDED for further proceedings consistent with this opinion.
KAHN and MICKLE, JJ., concur.

. In that respect, we see no impediment to our applying case precedent analyzing the term "wages” as it is used for purposes of determining entitlement to temporary and permanent wage loss benefits, as the inquiry remains focused on the comparison between pre- and post-injury wage earning ability.