ENRICO L. PAOLETTI, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (The Village of Winnetka, Appellee).

First District (Industrial Commission Division) No. 1—95—2007WC

Opinion filed May 3, 1996.

Feeley & Hielscher, of Northfield, for appellant.

Johnson, Drozdzik, Van Driska & Andros, Ltd., of Chicago, for appellee.

JUSTICE COLWELL delivered the opinion of the court:

Claimant, Enrico L. Paoletti, appeals the trial court's affirmance of the Industrial Commission's (Commission's) decision which modified the arbitrator's decision. Claimant argues on appeal that: (1) the Commission's finding that the "net profit" of his landscaping business should not be included in the calculation of his average weekly wage is against the manifest weight of the evidence; (2) the ruling of the Commission, admitting additional evidence, is against the manifest weight of the evidence; (3) he was denied due process of law because the arbitrator did not allow him to present rebuttal evidence to the testimony of Dr. Mercier; (4) he was denied due process of law because the Commission did not allow him to present rebuttal evidence to a video surveillance tape of claimant; and (5) the Commission's finding that he is permanently partially disabled only to the extent of 20% loss of the person as a whole is against the manifest weight of the evidence. We affirm in part, reverse in part, vacate the Commission's award and remand this cause to the Commission with directions.

The following are the pertinent facts. Claimant sustained an

injury to his back on May 17, 1985, when he picked up a bag of garbage while he worked as a refuse scavenger for respondent, Village of Winnetka, public works department. Claimant was treated for his back injury at the Highland Park Hospital emergency room on May 18, 1985.

We note that the claimant, while working for respondent, was also the president and sole shareholder of E. Henry Paoletti, Inc., which is a landscaping business. The claimant operated his landscaping business as a subchapter S corporation, and elected to be covered under the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 1992)).

The claimant testified that he was seen on three occasions by Dr. Henry Hollander, who was the respondent's doctor. He stated that Dr. Hollander referred him to Dr. Rothman for treatment on his back. Claimant was admitted to Highland Park Hospital on July 26, 1985, where he underwent a laminectomy and microdisectomy. The disc at L5-S1 was removed during these procedures. Claimant was discharged from the hospital on August 1, 1985. Claimant injured his back again in a car accident on August 13, 1985.

Gayle Jones, a personnel officer for respondent, testified that Dr. Rothman was one of the doctors who handled work-related injuries for the respondent. Dr. Rothman provided respondent, at its request, records and reports of the claimant's progress during the period of May 21, 1985, through October of 1986.

Ms. Jones sent Dr. Rothman a letter, dated November 18, 1985, which requested Dr. Rothman to give his opinion on whether claimant would be able to perform certain jobs for respondent. The list of possible jobs was identified as follows:

Drive truck
Drive truck (pick up parts)
Sweep floor
Mop floor
Clean wash rooms
Wash windows
Wash walls
Rake leaves
Clean trucks
Polish trucks
Landscaping (in season)
Operate snow blower (mounted on tractor)
Plow snow
Shovel snow
Paint
Sand blast

Climb ladder
Reaching
Pushing
Pulling

Dr. Rothman replied to Ms. Jones in writing on November 27, 1985, that he had gone over the list of jobs available and opined that there were not many jobs that the claimant would be able to perform. Dr. Rothman recommended to Ms. Jones that a desk-type job would be "much more appropriate" than any of the activities she listed in her request.

Dr. Rothman also completed a form which indicated that the claimant could bend, squat and lift occasionally, but could not climb.

Ms. Jones sent a letter to Dr. Rothman, dated February 21, 1986, which requested that he complete an enclosed work evaluation form. Dr. Rothman completed the form on March 7, 1986, which had the same restrictions as mentioned above. Ms. Jones requested Dr. Rothman to complete another work evaluation form on July 18, 1986. Dr. Rothman indicated in his "Return to Work memorandum" that the claimant's medical condition allowed him to return to full-time employment with limited duty as of July 28, 1986. Dr. Rothman's medical records, dated September 16, 1986, indicate that the claimant was permitted to "resume activities, but not heavy lifting or excessive bending."

The claimant remained off work from June 17, 1985, until April 13, 1986. The claimant returned to work on a part-time basis as a records clerk in the Winnetka police department on April 13, 1986.

Lawrence Boksa, a private investigator, testified at the arbitration hearing for the respondent. Mr. Boksa testified that he video taped claimant's activities on November 27, 1987, December 5, 1987, January 24, 1988, and March 23, 1988. He stated that he filmed the claimant placing two roles of insulation and a can of paint into the trunk of his car on November 27, 1987. He stated that on December 5, 1987, he filmed the claimant bending and stretching while he placed Christmas lights on shrubbery and trees in front of his residence. Boksa testified that on January 24, 1988, he filmed the claimant plowing the driveway area of his residence with a snow plow for 20 minutes, and manually cleaning the sidewalk and porch area of his residence for approximately 10 minutes. Boksa stated that on March 23, 1988, he filmed claimant driving from his residence to a landscaping job in Winnetka, where the claimant exited his vehicle and appeared to inspect the premises and give orders to his employees. Later that day, he filmed the claimant driving to a bank and hardware store. The activities that Boksa filmed on the four above dates are contained in four video tapes.

The respondent offered into evidence at the arbitration hearing the four surveillance video tapes. The arbitrator admitted the video tapes into evidence.

Dr. Rothman testified in an evidence deposition taken on August 1, 1988, that it was his opinion that the claimant could not return to work as a refuse scavenger. Dr. Rothman also stated that he observed the surveillance video tapes of the claimant which showed the claimant shovelling snow and putting up Christmas lights.

The claimant saw Dr. Mercier, a board-certified orthopedic surgeon, for treatment of his back in August of 1987. Dr. Mercier testified in an evidence deposition that "the girls up front" took the claimant's history on "a plain piece of paper." Dr. Mercier examined the claimant for approximately 10 to 15 minutes. Claimant's attorney asked Dr. Mercier whether he dictated claimant's history, and Dr. Mercier replied:

"A. No, that came directly from the written statement that was taken by the girls in the front.

Q. This history is a—this is a transcription then of what the girls took down?

A. Right, and as reviewed by me and the patient."

The claimant requested at the arbitration hearing that he be allowed to testify in rebuttal to Dr. Mercier's testimony that Dr. Mercier reviewed the history with him. The arbitrator denied claimant's request. Claimant made an offer of proof in which he stated that if he were permitted to testify, he would deny that Dr. Mercier reviewed with him any medical history, documents or any other notes.

Dr. Mercier also testified that the claimant could have returned to work on almost an unrestricted level as of November 25, 1985, and that the claimant could have worked as a refuse scavenger as of February 1988. He based his opinion on his examination of the claimant, the four video surveillance tapes, and a review of claimant's medical records.

Dr. Mercier opined that Dr. Rothman prescribed restrictions from November 1985 through February 1986 only as a preventative measure, since there were no objective findings to support the restrictions. He also stated that Dr. Rothman's work restrictions in February 1988 were unrealistic. Dr. Mercier testified that he viewed the video surveillance tapes of claimant and that, in those tapes, claimant performed almost all of the restricted activities that Dr. Rothman proscribed without difficulty. Dr. Mercier testified that the blanket restrictions that Dr. Rothman placed on claimant are not in line with the Chicago orthopedic medical community for treating patients with low back pain. Dr. Mercier further stated that the claimant's

range of motion in November 1985 was greater than his range of motion when he examined claimant in August 1987.

The claimant continued to work as a records clerk at the Winnetka police department until February 8, 1988, when he was then assigned to return to work in the public works department. Dr. Rothman completed a current "Work Restriction Evaluation" on February 8, 1988. The restrictions that Dr. Rothman placed on claimant were essentially the same as he had prescribed in the past. Claimant presented a copy of Dr. Rothman's "Work Restriction Evaluation" to William Willing, the superintendent of streets of Winnetka, on February 10, 1988. The claimant testified that Willing sent him home that same day. Mr. Willing testified that he told the claimant: "I can't put you on. I'm afraid you might get hurt, and I can't put you back to work at that day [sic]."

The claimant testified that he was never contacted by any personnel of respondent about his work status or returning to work since February 10, 1988. Robert Buechner, the village manager for respondent, forwarded a letter to the claimant on September 3, 1988, which advised claimant that as of that date, the claimant had been on a "leave of absence" from his employment with respondent for six months, and that because the claimant had not requested to return to work, his employment with respondent would be terminated as of the following day, September 4, 1988.

The arbitrator found that claimant sustained an accidental injury on May 17, 1985, which arose out of and in the course of his employment with respondent. The arbitrator found that the claimant's earnings during the period of the injury were $22,679.80, and that his average weekly wage was $436.15. The arbitrator found that claimant was temporarily totally disabled for a period of $59^2/7$ weeks and was permanently disabled to the extent of 60% loss of the person as a whole. The claimant and respondent appealed the arbitrator's decision to the Commission. Respondent's counsel notified claimant's counsel on February 27, 1991, that they intended to present additional evidence at the review hearings before the Commission on March 14, 1991, in the form of oral testimony and an additional surveillance video tape, which depicts claimant engaged in numerous activities on July 19, 1990.

The claimant objected to the submission of the additional evidence and filed a response to respondent's notice of submission of additional evidence. The Commission denied claimant's objection and admitted the additional video tape into evidence. The Commission barred the claimant from presenting rebuttal evidence to the additional video tape.

The Commission rendered its decision on August 21, 1991. The Commission affirmed and adopted the arbitrator's decision, except that it modified the arbitrator's decision regarding permanent disability and found that the claimant was permanently disabled only to the extent of 20% loss of the person as a whole. The Commission relied on the additional video surveillance tape and Dr. Mercier's testimony in modifying the arbitrator's decision. The circuit court of Cook County confirmed the Commission's decision.

■ The claimant first contends that the Commission erred in failing to include the income generated by his landscaping business in calculating his average weekly wage. Section 10 of the Workers' Compensation Act (820 ILCS 305/10 (West 1992)) (Act) sets forth the method of calculating compensation as follows:

"The compensation shall be computed on the basis of the 'Average weekly wage' which shall mean the actual earnings of the employee in the employment in which he was working at the time of the injury during the period of 52 weeks ending with the last day of the employee's last full pay period immediately preceding the date of injury, illness or disablement excluding overtime, and bonus divided by 52 ***. *** When the employee is working concurrently with two or more employers and the respondent employer has knowledge of such employment prior to the injury, his wages from all such employers shall be considered as if earned from the employer liable for compensation." 820 ILCS 305/10 (West 1992).

The arbitrator only took into account claimant's earnings from respondent in calculating his average weekly wage. The portion of the arbitrator's decision which discusses claimant's average weekly wage, which the Commission adopted, states in relevant part:

"The petitioner at the time of the occurrence was also self-employed—he was President of E. Henry Paoletti Company, Inc., a subchapter S corporation. There is no question that Respondent knew of his other business venture as the Petitioner had bid on several jobs with the Respondent over a lengthy period of time. It was stipulated that in 1984 and 1985 the Petitioner received *no wages* from this corporation, but did receive income in the form of net profits. The issue then becomes whether sources of income *other than* wage earnings can be computed into the average weekly wage figure. I could find no case directly on point. The annual earnings terminology of Section 10 which reads '...as salary, wages or earnings' has never been liberally construed to include 'net profits.' I therefore find that the petitioner's earnings were $22,679.80 and that his average weekly wage was 436.15." (Emphasis in original.)

After a careful review of the record, we could not find any evidence of a stipulation that the claimant received no wages in 1984 and 1985 from his landscaping business. However, the corporate tax returns for E. Henry Paoletti, Inc., show that E. Henry Paoletti, Inc., did not pay the claimant any wage or salary. It appears from the record that the net profit of E. Henry Paoletti, Inc., in 1984 was $16,775.

Claimant argues that section 10 of the Act defines the term "wage" as "actual earnings" in the employment of the employee and that actual earnings should be construed to include the net profit of his landscaping business. In support of his argument, he points to the following: He elected to be covered under the Workers' Compensation Act as an officer of a small business for his landscaping business, and he performed numerous duties as an employee of E. Henry Paoletti, Inc., which included paper work, answering phone calls, obtaining materials (especially sod), transplanting sod, moving dirt, planting flowers, and cutting grass.

The question of whether net profits should be considered in calculating a claimant's average weekly wage is of first impression in Illinois. Professor Larson states in his treatise:

"Generally, profits from a business, whether commercial or farm, are not considered as wages for purposes of establishing average wage. But close questions have arisen in connection with corporate officers, who may be stockholders, whose remuneration is not fixed but depends to some extent on the fortunes of the business. One court has held [(*P&L Construction Co. v. Lankford*, 559 S.W.2d 793 (Tenn. 1978))] the employee's share of profits was not the correct measure, but that the test should be the wage of another employee performing similar duties." 2 A. Larson, *Law of Workmen's Compensation* § 60.12(e), at 10—684 through 10—685 (1992).

Further, the workmen's compensation section of Corpus Juris Secundum states in part:

"Even though claimant is injured in the course of his work as an employee for the business which he operates, his profits, as distinguished from his wages, are not to be considered in computing his compensation." 99 C.J.S. *Workmen's Compensation* § 294, at 1022 (1958).

■ We hold that a claimant's business income should not be included in the calculation of average weekly wage. We would be legislating from the bench if we were to hold that "actual earnings" should be construed to include net profit. See *Pluto v. Industrial Comm'n*, 272 Ill. App. 3d 722 (1995). We note that the reasoning in *Lankford* (which is cited above in Larson's treatise) may, under certain factual circumstances, apply in calculating a claimant's average weekly wage. However, the present case is not one of them

because the claimant did not present evidence of what the wage would be of another employee performing similar duties as claimant alleged he performed for his landscaping business.

■ The claimant next contends that the Commission erred in admitting into evidence the additional surveillance video tape. We find that the Commission did not err in this regard. Section 19(e) of the Act governs the area on whether the Commission may admit additional evidence. Section 19(e) was amended in 1989. The amended section 19(e) states in pertinent part:

"In all cases in which the hearing before the arbitrator is held after December 18, 1989, no additional evidence shall be introduced by the parties before the Commission on review of the decision of the Arbitrator." 820 ILCS 305/19(e) (West 1992).

In the present case, the hearing before the arbitrator took place on January 18, 1988. Therefore, former section 19(e) of the Act applies to this case. That section provides in relevant part:

"Additional evidence may be added where such evidence (1) relates to the condition of the employee since the time of the arbitration hearing, (2) relates to matters that occurred or conditions that developed after the arbitration hearing, or (3) was, for good cause, not introduced at the arbitration hearing." Ill. Rev. Stat. 1987, ch. 48, par. 138.19(e).

Under this former section of the Act, it was within the sound discretion of the Commission to determine whether or not additional evidence should be allowed on review. *Werries v. Industrial Comm'n*, 114 Ill. 2d 43 (1986). In the present case, the additional video surveillance tape, which depicts claimant engaged in numerous activities on July 19, 1990, relates to the claimant's physical condition after the arbitration hearing. The Commission did not abuse its discretion in admitting the additional video tape into evidence.

■ The claimant next contends that he was denied due process of law because he was not allowed to present rebuttal evidence to the testimony of Dr. Mercier. Claimant made an offer of proof at the arbitration hearing in which he stated that if he were permitted to testify, he would deny that Dr. Mercier reviewed with him any medical history, documents or any other notes.

Our research has not found a workers' compensation case in Illinois which addresses the issue of whether a party is denied due process of law if the party is not allowed to present rebuttal evidence. The case law in other jurisdictions has held that a party is denied due process of law if the party is not permitted to present rebuttal evidence in workers' compensation cases. See, *e.g.*, *Bituminous Casualty Co. v. Department of Industry, Labor & Human Relations*, 97

Wis. 2d 730, 295 N.W.2d 183 (1980); *Massachusetts Bonding & Insurance Co. v. Industrial Accident Comm'n,* 74 Cal. App. 2d 911, 170 P.2d 36 (1946).

Further, the United States Supreme Court has held that administrative agencies, in exercising their adjudicatory functions, are bound by the due process clause of the fourteenth amendment to the United States Constitution to give the parties before them a fair and open hearing. See, *e.g., Ohio Bell Telephone Co. v. Public Utilities Comm'n,* 301 U.S. 292, 305, 81 L. Ed. 1093, 1102, 57 S. Ct. 724, 730 (1937). Moreover, the Illinois Appellate Court in *Hazelton v. Zoning Board of Appeals,* 48 Ill. App. 3d 348, 351 (1977), held that due process of law requires that all parties, in proceedings before administrative agencies, have an opportunity to cross-examine witnesses and to offer evidence in rebuttal. *Hazelton,* 48 Ill. App. 3d at 351. Professor Larson states in his treatise:

"Nothing is more repugnant to our traditions of justice than to be at the mercy of witnesses one cannot see or challenge, or to have one's rights stand or fall on the basis of unrevealed facts that perhaps could be explained or refuted." 3 A. Larson, *Law of Workmen's Compensation* § 79.83(a), at 15—497 through 15—499 (1994).

We find that the arbitrator erred in not permitting the claimant to present rebuttal evidence to the testimony of Dr. Mercier. However, this error was harmless. It appears from the record that Dr. Mercier's opinion was based on his physical examination of claimant, the four video surveillance tapes (admitted into evidence at the arbitration hearing), and a review of claimant's medical records. We fail to see how the claimant was prejudiced simply because he was not permitted to testify that Dr. Mercier did not review with him any medical history, documents or any other notes.

■ The claimant also contends he was denied due process of law because the Commission barred him from presenting rebuttal evidence to the additional video surveillance tape which was admitted into evidence before the Commission. This video tape depicts the claimant engaged in various activities related to the operation of his landscaping business on July 19, 1990. The claimant argues that he was precluded from presenting the rebuttal evidence of his treating doctor with regard to his medical opinion of the tasks performed by the claimant in the video tape taken on July 19, 1990, and that he was precluded from testifying in rebuttal to describe his physical condition during the activities being performed, to explain the numerous cuts in the tape, to describe the nature of the landscape job being

performed by his company, and to identify the activities he performed for those periods when he was not being filmed.

We find that the Commission erred in barring the claimant from presenting rebuttal evidence to the additional video surveillance tape and that this error was not harmless. Professor Larson states in his treatise:

> "Although on the surface it might appear that nothing could be more cogent and a more dramatic refutation of a disability claim than motion pictures of the claimant jacking up a car or playing tennis, the courts have rightly observed that such evidence must be used with great caution. For example in a Louisiana case [(*Gagliano v. Boh Construction Co.*, 44 So. 2d 732 (La. App. 1950))], the insurer had managed to take pictures showing the claimant doing certain heavy work. What the pictures did not show was that the claimant had to rest between the scenes shown in the films, that he was in constant pain, and that he had to go to bed the next day." 3 A. Larson, *Law of Workmen's Compensation* § 79.75, at 15—488 through 15—489 (1994).

Cases such as *Gagliano* clearly show the importance of allowing a claimant to present evidence to rebut a video surveillance tape. This is particularly true in the present case since the Commission specifically relied on the additional video surveillance tape in modifying the arbitrator's permanent disability award from 60% loss of the person as a whole to 20% loss of the person as a whole. We note that when the claimant requested a continuance in order to put forth rebuttal evidence to the additional video tape, the Commission told claimant to respond to the contents of the tape in his brief before the Commission. A brief, however, is not evidence and it is well settled that the Commission's findings must be based on evidence introduced in the record. See *County of Cook v. Industrial Comm'n*, 68 Ill. 2d 24 (1977); *Hazelton*, 48 Ill. App. 3d at 352. Thus, the Commission's suggestion was ill-advised. We therefore vacate the Commission's award and remand this cause to the Commission in order to allow the claimant to present rebuttal evidence to the additional video tape.

We need not address claimant's final contentions, that the Commission's finding that he is permanently partially disabled only to the extent of 20% loss of the person as a whole is against the manifest weight of the evidence, since we are vacating the Commission's award and remanding this cause to the Commission and we express no opinion as to the appropriateness of that award.

For the foregoing reasons, we affirm the Commission in part, re-

verse in part, vacate the Commission's award and remand this cause to the Commission with directions.

Affirmed in part, reversed in part, award vacated and cause remanded to the Commission.

McCULLOUGH, P.J., and RAKOWSKI, HOLDRIDGE, and RARICK, JJ., concur.