COURT OF APPEALS OF VIRGINIA


Present: Judges Elder, Annunziata and Frank
Argued at Alexandria, Virginia


ROBERT WALTER SMITH
                                                    OPINION BY
v.    Record No. 2275-99-2              JUDGE LARRY G. ELDER
                                             APRIL 25, 2000
ROBERT W. SMITH AND
 STATE FARM FIRE & CASUALTY INSURANCE COMPANY


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

             John G. Berry (Berry & Early, on brief), for
             appellant.

             Kathryn Spruill Lingle (Brenner, Dohnal,
             Evans & Yoffy, P.C., on brief), for
             appellees.


     Robert Walter Smith (claimant) appeals from a decision of

the Workers' Compensation Commission denying his request for

temporary disability benefits following an injury by accident on

April 12, 1997, while he was employed by Robert W. Smith, a sole

proprietorship, which received workers' compensation insurance

coverage through State Farm Fire & Casualty Insurance Company

(hereinafter collectively "employer").  On appeal, claimant

contends the commission erroneously determined that he suffered

no loss of earning capacity even though he was both totally and

partially disabled for various portions of 1997 as a result of

the injuries he sustained in the accident.  Given the

uncontradicted evidence that claimant was disabled and unable to

earn his full hourly wage for a portion of 1997, although he continued to receive "draws" of profit from the business, we hold the commission erred in relying solely on the fact that the net profit figure claimant reported to the Internal Revenue Service for all of 1997 was greater than the figure he reported in 1996.  We also hold that, to the extent the commission included business profits rather than wages or their equivalent in its calculation of claimant's pre- or post-injury wage, the commission erred.  Therefore, we reverse the commission's decision, vacate its denial of benefits and remand for further proceedings consistent with this opinion.

I.

FACTS

Claimant, a self-employed construction contractor, operated a sole proprietorship with five employees.  As permitted by Code § 65.2-101, claimant elected to be covered as an employee under the Workers' Compensation Act.[1]  While working for the sole proprietorship on April 12, 1997, appellant was injured in a fall from a balcony.  He claimed temporary total disability from April 12 through June 26, 1997, and temporary partial disability

_____

[1] Code § 65.2-101 provides that the definition of an employee under the Act includes "[a]ny sole proprietor . . . electing to be included as an employee under the workers' compensation coverage of such business if the insurer is notified of this election.  Any sole proprietor . . . shall, upon such election, be entitled to employee benefits and be subject to employee responsibilities prescribed in this title."

-

from July 3 through November 6, 1997.  Employer accepted the injury as compensable but refused to pay temporary disability benefits on the ground that claimant suffered no wage loss.

Claimant's evidence indicated that immediately prior to the accident, claimant was working on two "time, materials plus commission" jobs, which meant he earned income from the business in two ways.  He worked an average of over forty hours per week and was paid at the rate of $25 per hour for an average total of $1,000 per week.  He also received a fifteen percent commission on all materials and labor, including his own, charged on the particular job.  After the accident, two of his employees, his brothers, managed the business while he was unable to work.  The business continued to make money, and claimant continued to receive a draw from the business during this time.

Claimant and his wife, the business's bookkeeper, offered testimony about claimant's Exhibit 8, which showed the money claimant received from the business during the periods of his total and partial disability.  Claimant's Exhibit 8 reflects that claimant received draws totaling an average of $1,563.02 per week during the eleven weeks for which he sought temporary total disability.  Claimant testified that his draws during that period were "from my workers working on the job that I had going," and wife testified that these funds were from commissions for prior and current jobs.  She said they needed "the draws to live on," but also testified that claimant would

-

have received his wages in addition to the commissions if he had been able to work during that period.

Exhibit 8 reflects draws totaling an average of $1,691.30 per week during the approximately eighteen weeks for which claimant sought temporary partial disability.  Wife testified that these sums included both commission and income from wages because claimant was able to work part-time.  Claimant's evidence showed the number of hours he worked during each of those weeks.

Claimant's 1996 federal income tax return reflected a net profit of $76,915.  Claimant's 1997 federal income tax return reflected a net profit of $77,915.  Claimant and his wife, the business's bookkeeper, testified that the business paid $30,000 worth of expenses on December 30, 1996, that were not actually due until January 25, 1997, in order to gain a tax advantage as against profits from "a big job" on which "[claimant] had made right much money" in 1996.  Had they paid the expenses when due, they contended the business's income would have been $30,000 higher in 1996 and $30,000 lower in 1997 and that these figures would more accurately have reflected claimant's wage loss in 1997.

Claimant's wife also testified that she and claimant prepared their income tax returns based on the cash method of accounting but that "the accrual method is much more accurate on what a business does."  She testified that she kept the

-

business's books using the accrual method, and she prepared annual profit and loss statements for the business under the accrual method showing net income of $150,000 for 1996, $26,000 for 1997, and $137,000 for 1998. All funds claimant received from the business both before and after the accident were listed on the profit and loss statements as "Owners Draw."

Relying on the evidence of the net business profit reported to the Internal Revenue Service in 1996 and 1997, the commission held claimant failed to establish an economic loss and, therefore, was not entitled to wage loss benefits. The commission noted that, because the business was a sole proprietorship rather than a corporation, the profitability of the business "directly correspond[ed] to the claimant's economic situation." It also held that the manner of allocating the $30,000 in expenses was not determinative under this reasoning, and it made no finding on this issue.

## II.

## ANALYSIS

Claimant contends the commission erroneously compared the income figures he reported to the Internal Revenue Service (IRS) in 1996 to those he reported in 1997 and refused to consider undisputed testimony regarding his inability to earn the full hourly wage component of his pre-injury income for a period of approximately twenty-nine weeks. He argues that the commission's use of his annual income reported to the IRS

-

deprived him of his entitlement to the benefit of the financial success of the business during the periods of 1997 when he was not disabled.[2]  We agree that the commission erroneously calculated claimant's wage loss.

Under settled principles, a workers' compensation claimant seeking disability benefits must establish each element of his claim by a preponderance of the evidence.  See Sentara Leigh Hosp. v. Nichols, 13 Va. App. 630, 638, 414 S.E.2d 426, 430 (1992) (en banc); Terry-Kirby v. Horton-Adamson Plastic Surgeons, No. 174-52-16, 1996 WL 1075792, **2 (Va. Workers' Comp. Comm'n May 16, 1996).

> It [is] the duty of the Commission to make the best possible estimate of future impairments of earnings from the evidence adduced at the hearing, and to determine the average weekly wage . . . .  This is a question of fact to be determined by the Commission which, if based on credible evidence, will not be disturbed on appeal.

Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 441, 339 S.E.2d 570, 573 (1986).

"The commission is guided by statute in determining average weekly wage."  Dominion Assocs. Group, Inc. v. Queen, 17 Va.

---

[2] Claimant also contends the commission erroneously failed to acknowledge evidence that the 1996 and 1997 taxable income reported to the IRS was skewed because of a payment made December 30, 1996, that was not due until January 25, 1997.  The commission found that resolution of this factual issue was not relevant to its determination.  Because we reverse and remand on other grounds, we find it unnecessary to reach this issue.

-

App. 764, 766, 441 S.E.2d 45, 46 (1994). Code § 65.2-101

defines "average weekly wage" as follows:

> 1.a. The earnings of the injured employee in the employment in which he was working at the time of the injury during the period of fifty-two weeks immediately preceding the date of the injury, divided by fifty-two . . . . When the employment prior to the injury extended over a period of less than fifty-two weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed, provided that results fair and just to both parties will be thereby obtained. . . .
>
> b. When for exceptional reasons the foregoing would be unfair either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.

"The reason for calculating the average weekly wage is to

approximate the economic loss suffered by an employee . . . when

there is a loss of earning capacity because of work-related

injury." Bosworth v. 7-Up Distrib. Co., 4 Va. App. 161, 163,

355 S.E.2d 339, 340 (1987). Benefits are for loss of earning

power and are "not necessarily proportional to the bodily

functional disability." J.A. Foust Coal Co. v. Messer, 195 Va.

762, 765-66, 80 S.E.2d 533, 535 (1954) (decided under former

Code §§ 65-51 and 65-52). If the claimant suffers a disability

as a result of the injury, the commission must compare the

claimant's pre-injury average weekly wage to the wage he is able

to earn after the injury to determine whether he is entitled to

-

total or partial disability benefits and, if so, at what rate.
See Code §§ 65.1-500, 65.2-502.

Here, claimant's injury occurred on April 12, 1997. The commission did not expressly calculate his pre- or post-injury average weekly wage. It relied solely on the fact that claimant experienced no decrease in annual net profit in 1997 compared to 1996, as reported to the IRS on claimant's federal income tax returns. Citing Meredith Construction Co. v. Holcombe, 21 Va. App. 537, 466 S.E.2d 108 (1996), the commission held that "[b]ecause the claimant was a sole proprietor, this change in net profit inures directly to his benefit, and provides an effective gauge for measuring economic impairment." Based on Holcombe, the commission concluded that "claimant has established no economic loss that would entitle him to wage loss benefits."

We agree with the commission's observation that the net profit earned by claimant's sole proprietorship inured directly to his benefit. However, we hold the commission's denial of benefits was erroneous for two reasons.

First, we agree with claimant's assertion that Holcombe neither requires nor supports the income comparison method applied by the commission in this case. Because claimant's injury occurred April 12, 1997, the commission erred in comparing claimant's business income for 1996 to the business income for 1997 to conclude that claimant sustained no economic

-

loss.  Rather, the commission should have compared claimant's

pre-injury average weekly wage, or a comparable calculation as

permitted under Code § 65.2-101, with what he earned or had the

ability to earn during the period of his physical disability

from April 12 through November 6, 1997, or held that it lacked

sufficient credible evidence to make such a comparison.

Holcombe does not support the result reached by the

commission.  In Holcombe, the claimant had an ongoing partial

physical disability for which he had been receiving partial

disability compensation.  See Holcombe v. Meredith Constr. Co.,

No. 130-27-60, 1994 WL 1040028, *1 (Va. Workers' Comp. Comm'n

Dec. 13, 1994).  Several years after his injury, Holcombe began

operating a sole proprietorship.  See id.  When his former

employer learned of this fact several months later, it sought a

re-calculation of Holcombe's ongoing partial wage loss, if any,

based on his self-employment income.  See id.  The commission

ruled as follows:

> [Holcombe's] earnings should be determined
> on a quarterly basis from the time he
> commenced operation[] [of the sole
> proprietorship].  The average weekly wage
> should be based on the net taxable income
> reported by the business for federal income
> tax purposes.  This figure will, of course,
> include all allowable expenses, including,
> but not limited to, depreciation and
> interest.  Inasmuch as this is a sole
> proprietorship, any draws or salary paid to,
> or on behalf of, [Holcombe] from the
> business is included as taxable income.
> Upon determination of [Holcombe's] net
> taxable income for each quarter, that number

-

should be divided by the appropriate number of weeks in that quarter. . . . [Holcombe's] net taxable income can be calculated at the end of each quarter.  In this regard he should make available to the employer . . . all books and records of the sole proprietorship so that income and expenses may be verified.

Id.

The employer appealed, claiming the commission's deduction for depreciation was erroneous.  See Holcombe, 21 Va. App. at 538, 466 S.E.2d at 109.  Focusing on the propriety of the depreciation deduction under the facts of that case, we affirmed the commission's decision to base the average weekly wage calculation on Holcombe's net taxable income.  See id. at 540-42, 466 S.E.2d at 110-11.  We also approved of the commission's order requiring Holcombe to make available to the employer his books and records, which would allow the employer to be sure that the claimed depreciation "is 'an actual business expense.'"  Id. at 541-42, 466 S.E.2d at 111 (citing Semones v. New Jersey Zinc Co., 68 O.I.C. 1 (1989)).

Holcombe stands for the proposition that net taxable income may be an appropriate method for determining the income of a sole proprietor because it takes into consideration depreciation and other allowable expenses.  However, Holcombe does not require that only this method may be used.  See 21 Va. App. at 541, 466 S.E.2d at 110-11 (implicitly approving commission's method of calculating average weekly wage in Jett v. Jett, No.

-

154-35-14 (Va. Workers' Comp. Comm'n Jan. 19, 1994), which did not include depreciation, because commission believed alternate method to be more accurate). Further, Holcombe's partial physical disability was ongoing, and the commission calculated his post-injury income based on the net taxable business income he earned quarterly. Here, by contrast, claimant alleged he was totally disabled for about eleven weeks and partially disabled for about eighteen weeks. Therefore, the relevant income was his income during those specific periods of claimed disability, not during the entire 1997 tax year, unless some reason for using a different period was established. Cf. Allegheny Airlines, Inc. v. Merillat, 14 Va. App. 341, 345, 416 S.E.2d 467, 470 (1992) (where evidence established claimant's total disability for fraction of week, fact that claimant's average weekly wage for portion of week she was able to work was higher than pre-injury average weekly wage did not preclude finding of wage loss "calculated as an appropriate fraction of the weekly compensation rate").

Here, although claimant was injured on April 12, 1997, and was disabled for only a portion of 1997, the commission compared his net business income for that entire year with his net business income for the previous tax year. We hold that the commission erred because it failed to consider claimant's wages during the period of disability and may unfairly have attributed

-

to the period of disability income received in 1997 before or after the period of disability.

We also hold that the commission erred to the extent that it may have included business profits rather than wages or their equivalent in its calculation of claimant's pre- or post-injury wage. The propriety of including all net income of a sole proprietorship in the average weekly wage calculation, without differentiating between wages and profits, is a question of first impression in Virginia. We were not faced with this issue in Holcombe, in which we considered only whether the commission erred in allowing the deduction of depreciation expenses from the gross income of a sole proprietor.

"'The general rule is that profits derived from a business are not to be considered as earnings and cannot be accepted as a measure of loss of earning power unless they are almost entirely the direct result of [the claimant's] personal management and endeavor.'" The Washington Post v. District of Columbia Dep't of Employee Servs., 675 A.2d 37, 42 (D.C. 1996) (quoting Clingan v. Fairchance Lumber Co., 71 A.2d 839, 840 (Pa. Super. Ct. 1950)); cf. Twenty-First Century Concrete, Inc. v. Giacchina, 20 Va. App. 326, 457 S.E.2d 379 (1995) (holding that claimant was not required to show monetary loss to claimant's corporations in order to receive wage loss benefits where claimant was unable to perform his duties and had to reassign other employees to complete his duties, even though he had authority to draw wages

-

from the corporation due to his ownership interest).  "[T]he conduct of a sole proprietorship [may be scrutinized] to determine if the profits are the functional equivalent of wages."  Hotaling v. St. Johnsbury Trucking Co., 572 A.2d 1351, 1354 (Vt. 1990) (citing 2 Arthur Larson, Larson's Workers' Compensation Law § 60.12(e)); see The Washington Post, 675 A.2d at 42; cf. Pishotta v. Pishotta Tile & Marble, Inc., 613 So. 2d 1373, 1375-76 (Fla. Ct. App. 1993) (holding that corporate profits may be considered personal earnings of sole shareholder to extent they are fairly attributable to management and/or labor of sole shareholder rather than labor of others or mere return on capital).

New York courts hold that "'where a self-employe[d] claimant performs primarily a supervisory function,'" the resulting income may be classified as profit from investment rather than wages for purposes of calculating average weekly wage.  Joyce v. European Auto Serv., 641 N.Y.S.2d 175, 176 (N.Y. App. Div. 1996) (quoting Cozzi v. Christensen & Nielson, 367 N.Y.S.2d 134, 136 (N.Y. App. Div. 1975)).  Where a claimant was the owner and sole shareholder of a subchapter S corporation but also performed a considerable amount of work as a mechanic and received a "regular weekly 'draw' of $500" as well as a separate "profit-sharing distribution," a New York appellate court upheld the workers' compensation board's determination that his average weekly wage included only the $500 he earned from his work as a

-

mechanic.  See id. at 175-76.  The court concluded this was a factual finding dependent on whether the funds were profits or earnings.  See id.

An Illinois appellate court also has held that the profit component of a claimant's receipts from the S corporation of which he was the sole shareholder should not be included in his average weekly wage.  See Paoletti v. Village of Winnetka, 665 N.E.2d 507, 511-12 (Ill. Ct. App. 1996).  The applicable Illinois statute defined "average weekly wage" as "actual earnings" or "salary, wages or earnings."  See Paoletti, 665 N.E.2d at 511-12.  Claimant Paoletti had operated a landscaping business for which he performed both administrative work and manual labor but received only net profits and no sums denominated as wages or salary.  See id. at 512.  In holding that claimant's business profits should not be included in the calculation of his average weekly wage, the court noted that it "would be legislating from the bench if [it] were to hold that 'actual earnings' should be construed to include net profit." Id.  It noted, however, that the claimant may have been entitled to inclusion of a wage component from his landscaping business if he had provided evidence of the wage that would have been earned by another employee performing similar duties.  See id. (citing P & L Constr. Co. v. Lankford, 559 S.W.2d 793, 795 (Tenn. 1978)); see also Oberley v. Oberley Eng'g, Inc., 940 S.W.2d 953, 956 n.3 (Mo. Ct. App. 1997) (citing Mo. Rev. Stat.

-

§ 287.250.1(6), which provides that "[i]f the hourly wage has not been fixed or cannot be ascertained, or the employee earned no wage, the wage for the purpose of calculating compensation shall be taken to be the usual wage for similar services where such services are rendered by paid employees of the employer or any other employer").

A Louisiana appellate court made a similar distinction in a case involving a sole proprietorship, holding that profits earned after the claimant's injury and during a period of total disability resulted from claimant's wife's efforts and a "return on the investment" the couple made in the business and could not be used to determine claimant's post-injury earning capacity. See Clark v. Bobby L. Clark Trucking, 679 So. 2d 157, 161-62 (La. Ct. App. 1996).

Although Clark involved a sole proprietorship whereas Joyce and Paoletti involved subchapter S corporations, we hold that the principles applicable to wholly-owned subchapter S corporations are equally applicable in cases involving sole proprietorships.[3]  Virginia's Workers' Compensation Act, like Illinois', see Paoletti, 665 N.E.2d at 511-12, defines wages as "earnings."  See Code § 65.2-101.  We hold this definition does not include profits.  But see Oberley, 940 S.W.2d at 957

---

[3] Both a sole proprietor and the sole shareholder of a subchapter S corporation must pay income taxes on the business's earnings.  See Oberley, 940 S.W.2d at 954.

-

(holding that where subchapter S corporation's revenue was generated from professional accounting services of its sole shareholder or from personal services performed under him, funds generated by the business which shareholder withdrew to pay personal expenses, although not denominated "wages" for purposes of bookkeeping, could be considered wages for purposes of calculating pre-injury wage); Thompson v. Harold Thompson Trucking, 748 P.2d 430, 437-38 (Kan. Ct. App. 1987) (under statute defining wage as "the total of the money and any additional compensation . . . for services rendered," holding that where sole proprietor did not receive a salary, his owner withdrawals for payment of personal expenses for himself and wife, the business's bookkeeper, could be used to calculate his pre-injury average weekly wage); LaFleur v. Hartford Ins. Co., 449 So. 2d 725, 729 (La. Ct. App. 1984) (in calculating post-injury wage for claimant who became sole proprietor following injury while working for employer, holding that "profits should be treated the same as wages"). Whether a sole proprietor's business income comprises mainly wages, mainly profits, or a combination of the two depends on application of the above principles to the facts of the case.[4]

---

[4] We note these principles do not uniformly favor claimants over employers or vice-versa. Compare Paoletti, 665 N.E.2d at 511-12 (rejecting request of claimant to include profits in pre-injury average weekly wage calculation, thus lowering wage loss), with Clark, 679 So. 2d at 161-62 (in calculating claimant's post-injury earning capacity during period of claimed

-

For these reasons, we hold that the commission erred when it concluded that claimant suffered no economic loss solely because his taxable business income was higher in 1997 than in 1996.  We also hold that, to the extent the commission included business profits rather than wages or their equivalent in its calculation of claimant's pre- or post-injury wage, the commission erred.  Therefore, we reverse the commission's decision, vacate its denial of benefits and remand for further proceedings consistent with this opinion.

Reversed, vacated and remanded.

---

total disability, classifying draws claimant received from sole proprietorship during that disability as profits or return on investment rather than wages illustrative of post-injury earning capacity).

-