COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judges Benton and Kelsey
Argued at Richmond, Virginia


DANE BROWN, T/A DANE BROWN ELECTRICAL AND
 PRINCETON INSURANCE COMPANY
                                          OPINION BY
v.    Record No. 1598-02-2          JUDGE JAMES W. BENTON, JR.
                                           MARCH 11, 2003
DANE B. BROWN


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        S. Vernon Priddy III (Cecil H. Creasey, Jr.;
        Sands Anderson Marks & Miller, on brief), for
        appellants.

        Craig B. Davis (Emroch & Kilduff, on brief),
        for appellee.

     The sole issue raised by this appeal is whether the

commission erred by calculating an average weekly wage using the

sole proprietor's profit and loss statements for the fifty-two

weeks immediately preceding the injury rather than Schedule C

from the sole proprietor's prior year's tax return.  We hold

that the commission did not err, and we affirm the award.

                                I.

     Dane Brown filed an application for benefits alleging an

injury by accident.  At the evidentiary hearing, Brown testified

that he is a sole proprietor doing business as Dane Brown

Electrical and has elected coverage under the Act.  In his

business, Brown performs standard electrical contracting

services; he sells and installs stand-by automatic generators; and he provides estimates for electrical generators to his clients and to other electrical contractors' clients. On April 9, 2001, Brown visited the office of an electrical contractor and obtained the name of a customer who needed an estimate for a generator. Brown was en route to see that customer when a vehicle hit the rear of his automobile. Brown sustained neck and back injuries and received emergency treatment. He has not been released for employment.

Brown testified that he had cervical spine surgery on February 5, 2001 that was unrelated to this claim. Prior to the February surgery, Brown was in pain and could not perform the duties of his job as well as normal, but he continued to work because he "had to do it, . . . had to make a living." After the February surgery, Brown did not work for approximately eight weeks. Before the accident on April 9, 2001, however, Brown had been released to return to his employment and had been working two weeks.

Brown's wife testified by deposition that the business operates from an office in their home. Brown's wife is not an employee of the business; she is, however, its bookkeeper and prepares the taxes for the business. Brown's wife testified that she regularly uses a computer-based accounting program when she writes checks, pays bills, makes invoices, and does other accounting functions. When she prepares the income tax returns

for the business, she uses the computer-based accounting program and a computer-based income tax preparation program; she "plug[s] what's in [the] Quicken [accounting program] into the Turbo Tax [program] and it does the taxes."

Brown's wife testified that Schedule C from the business's income tax returns for the year 2000 showed gross receipts of $186,820 and a net profit of $4,174. That tax period ended December 31, 2000, four months before Brown's injury. At the request of Brown's attorney, she used the computer programs to prepare profit and loss statements for the fifty-two weeks preceding Brown's injury. Brown's wife prepared two profit and loss statements -- one for the electrical contracting work and another for the generator estimates and sales aspect of the business. The statements showed gross receipts of $231,714 between April 8, 2000 and April 8, 2001 and a net income of $35,996.27 for this same period. A substantial portion of the net income was attributable to the generator aspect of the business.

The deputy commissioner ruled that Brown proved he suffered a compensable injury by accident and that he has been totally disabled since the day of the accident. In determining Brown's average weekly wage, the deputy commissioner found that the tax return was not the most accurate account of Brown's net earnings for the statutory period. The deputy commissioner noted the significant difference between the net profits reported on

Schedule C for the year 2000 and reported on the profit and loss statements. The deputy commissioner found, however, that in preparing those documents Brown's wife had, in each instance, "merely taken the database which she kept on a contemporaneous basis using the computer software and used the software to produce these figures including the tax returns." In addition, the deputy commissioner found that because the figures were "essentially computer generated," Brown's wife did not artificially change the figures to enhance Brown's claim. The deputy commissioner credited her explanation that the net profit shown on Schedule C was lower than the actual profit, in part, because Schedule C required her to use a mileage deduction for business mileage, as opposed to actual mileage, and because it included an allowance for the business use of the home. In view of that testimony, the deputy commissioner found that the net profit shown on the profit and loss statements should be reduced by the home office expenses and used the prior year's calculation of the home office expenses to reduce the net profit shown on the profit and loss statements. The deputy commissioner found that Brown had net earnings of $32,586.27 from his business for the fifty-two weeks preceding the accident and determined that Brown's pre-injury average weekly wage was $626.66.

Upon review, the commission affirmed these findings and specifically noted that the Schedule C covered a different

fifty-two week period than the profit and loss statements.  The commission found that using Schedule C as the basis for computing the average weekly wage would deprive Brown of the benefit of the increase in his earnings from the business through April 9, 2001.

## II.

The employer and the insurer contend the commission relied upon an incorrect source in computing Brown's average weekly wage.  They argue that "case law and the evidence in this matter required the commission to accept the Schedule C from Brown's 2000 tax return."  We disagree.

In pertinent part, Code § 65.2-101 defines "average weekly wage" as follows:

> 1.a.  The earnings of the injured employee in the employment in which he was working at the time of the injury during the period of fifty-two weeks immediately preceding the date of the injury, divided by fifty-two . . . .
>
> b.  When for exceptional reasons the foregoing would be unfair either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.

The commission must be "guided by [this] statute in determining average weekly wage."  Dominion Assocs. Group, Inc. v. Queen, 17 Va. App. 764, 766, 441 S.E.2d 45, 46 (1994).

"The reason for calculating the average weekly wage is to approximate the economic loss suffered by an employee . . . when there is a loss of earning capacity because of a work related injury." Bosworth v. 7-Up Distrib. Co., 4 Va. App. 161, 163, 355 S.E.2d 339, 340 (1987). The commission's duty is "to make the best possible estimate of future impairments of earning from the evidence adduced at the hearing, and to determine the average weekly wage." Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 441, 339 S.E.2d 570, 573 (1986). This issue presents "a question of fact to be determined by the Commission which, if based on credible evidence, will not be disturbed on appeal." Id.

It is undisputed that the Schedule C tax form does not correspond to the fifty-two week period immediately preceding the date of Brown's compensable injury and that the profit and loss statements do. Our decisions in Smith v. Smith, 32 Va. App. 242, 527 S.E.2d 463 (2000), or Meredith Constr. Co. v. Holcombe, 21 Va. App. 537, 466 S.E.2d 108 (1996), do not require the commission to choose the Schedule C over the profit and loss statements as the basis for computing the average weekly wage. As we held in Smith, "Holcombe stands for the proposition that net taxable income may be an appropriate method for determining the income of a sole proprietor . . . . However, Holcombe does not require that only this method may be used." Smith, 32 Va. App. at 252, 527 S.E.2d at 468 (emphasis added).

- 6 -

The commission agreed with the deputy commissioner's finding "that the tax return in this case was not 'necessarily the most accurate account of [Brown's] net earnings from his business'" and, thus, not the proper foundation for determining Brown's average weekly wage. In particular, the commission found as follows:

> We agree with the Deputy Commissioner that the primary difference between the employer's [profit and loss] statement[s] and the Year 2000 Schedule C appears to be that they cover different periods, and reflect different gross incomes. If the commission were to rely upon the Schedule C, it would be basing the pre-injury average weekly wage only upon the employer's gross receipts, and [Brown's] earnings from January 1, 2000 to December 31, 2000. This would deprive [Brown] of the benefit of an increase in his earnings from the business between January 1, 2001 and the date of the accident on April 9, 2001. This is a significant difference, considering that the employer had gross receipts of $186,820.00 for tax year 2000, but had gross receipts of $231,714.51 for the fifty-two week period between April 8, 2000 and April 8, 2001.

These findings are supported by credible evidence.

The employer does not contend that "exceptional reasons" exist to deviate from the preferred statutory methodology. See Code § 65.2-101 (subpart b. of the "average weekly wage" definition). Instead, the employer argues that the record contained no explanation of "the source of the heightened gross receipts for the 12-month period covered by [the profit and loss statements] as opposed to the calendar year 2000 tax return."

The employer points to evidence that Brown had surgery in February 2001 and was away from his work for several weeks.

The record clearly establishes, however, that the commission accepted Brown's evidence about his finances and bookkeeping.  Brown's wife testified that she maintains the accounts of the business using a computer-based program and also prepared the business's tax returns using a computer-based tax program that synthesizes the information from the accounting program.  She testified that she used these same programs to generate profit and loss statements for the business which covered the fifty-two weeks immediately preceding the date of the injury.

The commission considered these matters and found as follows:

> While we recognize that [Brown] was incapacitated for some of the period between January 1, 2001 and April 9, 2001, [Brown] testified that he continued to work at full capacity until his surgery, and returned to full work duties weeks before the accident in this case.  The testimony of [Brown] and his wife attributed the income during the period of his work for the employer, and the insurer has not offered compelling evidence to the contrary.

These findings are supported by credible evidence.

The deputy commissioner and the commission also found that the profit and loss statements were reflective of the statutory period at issue and, when adjusted to reflect the business use of the residence, were a more accurate representation of the

business's earnings during this period.  Brown's wife's testimony and the documents support these findings, and they also support the commission's finding that no adjustment was needed for the car and truck expense because it was calculated in the profit and loss statements.

Accordingly, we hold that the commission did not err in finding that the profit and loss statements more accurately reflected Brown's earnings during the fifty-two weeks at issue and that credible evidence supports the commission's use of those statements as the basis for its calculation of Brown's average weekly wage.  We, therefore, affirm the award.

<u>Affirmed</u>.