John MULLEN, Petitioner

v.

WORKERS' COMPENSATION AP-PEAL BOARD (MULLEN'S TRUCK & AUTO REPAIR), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 4, 2008.

Decided April 3, 2008.

Arthur G. Girton, Chester, for petitioner.

Floyd W. Cotlar, Philadelphia, for respondent.

BEFORE: SMITH–RIBNER, Judge, SIMPSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge SIMPSON.

This workers' compensation matter filed in 1995 involves computation of an average weekly wage. We consider the term "wage" in the context of the injured worker's dual role as employee and as president and sole owner of the Subchapter S corporate employer.

John Mullen (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed a Workers' Compensation Judge's (WCJ) order granting a petition to review compensation benefits (review petition) and another petition filed on behalf of Mullen's Truck and Auto Repair (Employer) by its workers' compensation insurer (Insurer). Claimant contends the WCJ and the Board miscalculated his pre-injury average weekly wage (AWW) under Section 309 of the Workers' Compensation Act (Act) [1] by basing it on Claimant's net business income reflected by his 1993 federal tax returns rather than his 1993 W–2 wage and tax statement from Employer. For the following reasons, we affirm.

Employer, a truck and auto repair business, became a Subchapter S corporation (S corporation) [2] for federal income tax purposes in 1991. Claimant and his wife are Employer's sole shareholders. Claimant is Employer's president and director. In these capacities he determined his com-

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 582.

2. *See* Subchapter S of the Internal Revenue Code (Revenue Code), 26 U.S.C. §§ 1361–79. In particular, see 26 U.S.C. §§ 1361–63 (S corporation defined in part as a small business corporation, limited to 100 shareholders and one type of stock, electing S corporation filing status); 26 U.S.C. § 1366 (tax treatment of shareholders, pass-thru of items to shareholders, shareholder tax liability).

pensation as an employee. Claimant also owns two other S corporations, Tri–State Mobile Auto Repair, Inc. (Tri–State) and Mullen/Laughead Radiator Repair, Inc. (Mullen/Laughead Radiator).

In February 1994, Claimant sustained a compensable injury in the nature of a lumbosacral strain/sprain. Pursuant to a notice of compensation payable (NCP), Claimant began receiving weekly benefits at the rate of $493.00 per week based on a pre-injury AWW of $1,846.15.

In June 1995, Employer, relying on Claimant's individual 1993 and 1994 federal tax returns and on Employer's 1993 corporate return filed a review petition challenging Claimant's AWW. Employer alleged Claimant's individual 1993 net business income was $32,000. Divided by 52, this would yield an AWW of $615.38, with a weekly benefit rate of $410.25.[3] Employer's 1993 corporate return showed gross profits of $137,476.00, but a net loss of $66,417.

WCJ Fred J. Troilo (First WCJ) found "Claimant paid himself a salary of $96,000 raising doubts as to whether the [AWW] of $1,846.15 on which the weekly disability benefits are based, was not excessive when compared to the income generated by [Employer]." First WCJ Op., Finding of Fact (F.F.) No. 4. Ultimately, First WCJ granted Employer's review petition and amended the NCP to reflect an AWW of $615.38, with a weekly benefit rate of $410.25.

Claimant appealed on the basis the decision was arbitrary and unsupported by substantial evidence. Unable to determine what evidence First WCJ credited, the Board remanded for additional findings.

Also, Employer filed a modification petition asserting Claimant returned to work in 2001 after about seven years of total disability. The remanded review petition and the modification petition were assigned to WCJ Sara Makin (Second WCJ).

On remand, both parties presented expert testimony as to Claimant's pre-injury wage. Second WCJ credited the testimony of Employer's expert, John McDonnell (Investigator), a certified public accountant (CPA) and an employee of Insurer's fraud unit/special investigation unit. Conversely, Second WCJ did not credit the testimony of Claimant's experts, Patrick O'Brien (Claimant's First Expert), an attorney and a CPA, and Kevin Sheehan (Claimant's Second Expert), also a CPA.

Second WCJ agreed with Investigator's opinion that Claimant's AWW should be calculated based upon his net business profits rather than W–2 wages. In particular, Second WCJ found:

> [Investigator] investigated as to what Claimant's [AWW] would have been in 1993. Based on the 1120S tax return for [Employer], form 1120 individual tax return for Claimant, and earnings history report as reported to social security for Claimant, Claimant received a W–2 stating that he had $96,000 in wages for 1993 that was from [Employer]. That was paid out of an S corporation so that all of the income from [Employer] passed through to Claimant's personal tax return, since he was the sole shareholder of that corporation. In addition, [Employer] had reported [a] $66,472 net loss which passed through to Claimant's 1040 for 1993. The net of those two numbers is basically Claimant's earnings from the business. The net of the $96,000 which he received in wages from

---

**3.** *See* Section 309(c) of the Act; 77 P.S. § 582(c) ("If at the time of the injury the wages are fixed by the year, the [AWW] shall be the yearly wage so fixed divided by fifty-two....").

[Employer] and the $66,417 that resulted from [Employer] yield a net [of] $29,583. This is basically his net receipts or net earnings from [Employer]. Second WCJ Op. at 5–6, F.F. No. 9d.

Second WCJ also noted Claimant had a net business income from Tri–State in the amount of $1,821.00 (after taking into account a $15,000 deduction for depreciation). Second WCJ Op. at 6, F.F. No. 9f; Ex. D–2, Claimant's 1040 (1993), Schedule E. Second WCJ summarized Investigator's opinion as follows:

> [Investigator] opined that his calculation of Claimant's net earnings for 1993 were $31,404 based on his W–2 earnings from [Employer] of $96,000 subtracting from that figure a $66,417 loss that [Employer] generated which is reflected on his 1993 form 1040. To that amount is added $1,821, which is the amount reported on Claimant's 1993 1040 from Tri–State. [Investigator] opined that based upon his review of the records as a CPA ... that Claimant's earnings in 1993 were $31,404. This is based on the tax returns that were provided and the total earnings and net earnings of all the business activities from Claimant's W–2, from [Employer] and from the S corporation and from [Tri–State] is a net of $31,404.

Second WCJ Op. at 6, F.F. No. 9g, 9h.

In contrast, Second WCJ rejected the testimony of Claimant that he earned a pre-injury AWW of $1,846.15, as not credible or persuasive. Second WCJ Op. at 8, F.F. No. 12. Second WCJ noted Claimant, as president and sole owner, possessed complete authority to set his own wages. Id. Claimant had the ability to manipulate his wages and tax returns. Id.

Second WCJ also noted Claimant "was not forthcoming in supplying tax records from all three of his companies...." Id. Thus, Second WCJ determined "it was reasonable for [First WCJ] to reduce Claimant's reported 1993 wages by his reported losses to determine that Claimant's [AWW] was $615.38, based on an income of $32,000 per year which would give a weekly compensation rate of $410.25." Id.

Second WCJ also found Claimant's First Expert's testimony biased and more in the nature of an advocate than an expert. Second WCJ Op. at 8–9, F.F. No. 13. In addition, Claimant's First Expert did not adequately explain how Claimant's AWW should be calculated and why the $66,417 deduction should not be reflected in it. Id.

Further, Second WCJ rejected the testimony of Claimant's Second Expert because he did not possess or review all of Claimant's financial documents. Second WCJ at 9; F.F. No. 14. Second WCJ also found Claimant's Second Expert's testimony dubious inasmuch as he claimed to be the CPA for one of the other S corporations, Mullen/Laughead Radiator, but did not know the principal shareholder. Id.

Ultimately, Second WCJ concluded Employer met its burden of proving Claimant's AWW should be adjusted to $615.38 per week, with a weekly compensation rate of $410.25, as of March 18, 2004.[4]

Claimant appealed the reduced AWW. Recognizing Claimant was essentially self-employed, the Board determined the critical issue to be whether his gross income or net income more accurately reflected his earnings. Bd. Op. at 4 (citing *Bi–Thor Elec., Inc. v. Workers' Comp. Appeal Bd. (Thornton)*, 702 A.2d 1145 (Pa.Cmwlth. 1997)). Noting Second WCJ rejected

---

4. Second WCJ also resolved the modification petition in Employer's favor, and that matter is no longer at issue.

Claimant's evidence and accepted Employer's evidence that Claimant's 1993 wages were more accurately reflected by his net business income than by his W–2, the Board affirmed. Claimant's petition for review followed.[5]

## I. Argument

### A. Issues

Claimant assigns error in using his net business profits to calculate his AWW instead of the wages he received from Employer, error because Section 309 provides that the Employer's 1993 business expenses are not to be included in the calculation of his AWW, error by failing to realize the distinction between the calculation of Claimant's pre-injury AWW and his post-injury earning capacity, and error because the figure of $615.38 per week is not an accurate and realistic measure of Claimant's earnings.

### B. *W–2 v. Net Business Income*

Claimant argues Second WCJ erred by using his net business income rather than his actual 1993 wages as reflected by his W–2. He asserts there is nothing in Section 309 of the Act, 77 P.S. § 582, or the Internal Revenue Code that permits Second WCJ to conclude Claimant's wages are his net taxable income. Citing his 1993 W–2 and quarterly payroll reports,[6] Claimant asserts he realistically received $96,000.00 in wages from Employer. He

paid FICA[7] and other taxes on the full amount of his $96,000 salary.

Claimant relies on the following language in Section 309(e) of the Act, 77 P.S. § 582(e):

> The terms "average weekly wage" and "total wages," as used in this section, shall include board and lodging received from the employer, and gratuities reported to the United States Internal Revenue Service by or for the employe for Federal income tax purposes, but such terms shall not include amounts deducted by the employer under the contract of hiring for labor furnished or paid for by the employer and necessary for the performance of such contract by the employe, nor shall such term include deductions from wages due the employer for rent and supplies necessary for the employe's use in the performance of his labor. . . .

Citing this part of Section 309(e), Claimant asserts the $66,417 in business expenses must be excluded from the calculation of his pre-injury AWW. Claimant maintains Second WCJ failed to follow Section 309 in calculating his AWW.

As discussed above, Second WCJ determined Employer, in support of its review petition, presented credible evidence proving Claimant's pre-injury AWW should be reduced from $1,846.15 to $615.38. Additionally, Second WCJ rejected Claimant's evidence in support of his $1,846.15 AWW as not credible or persuasive.[8]

---

5. This Court's review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Minicozzi v. Workers' Comp. Appeal Bd. (Indus. Metal Plating, Inc.),* 873 A.2d 25 (Pa.Cmwlth.2005).

6. Claimant's 1993 W–2 shows "wages, tips and other compensation" of $96,000.00. R.R. at 359a. Claimant's records indicate a salary of $26,000 for the first quarter;

$22,000 for the second quarter; $22,000 for the third quarter; and $26,000 for the fourth quarter. *Id.* at 349a.

7. *See* Federal Insurance Contributions Act, 26 U.S.C. §§ 3101–3128.

8. "The WCJ's authority over questions of credibility, conflicting evidence and evidentiary weight is unquestioned." *Minicozzi v. Workers' Comp. Appeal Bd. (Indus. Metal Plating, Inc.),* 873 A.2d 25, 28 (Pa.Cmwlth.2005).

Essentially, Claimant urges our consideration of this controversy as an issue of law. He seeks a ruling that where a W–2 is issued, only the reported compensation can be considered in calculating AWW. Our review of the cases, however, persuades us that the controversy involves an issue of fact, with deference due those findings supported by substantial evidence.

■ The term "wages" is not specifically defined by the Act but is generally recognized as compensation given to a hired person for his or her services, based on time worked or output of production. *Scott v. Workers' Comp. Appeal Bd. (Crown Cork & Seal Co./Ace Am. Ins. Co.)*, 895 A.2d 68 (Pa.Cmwlth.2003). It is a term that should be broadly defined to include periodic monetary earnings and all compensation for services rendered without regard to the manner in which such compensation is computed. *Id.*

■ With respect to calculating a claimant's AWW, the Act was designed with an eye toward "the economic reality of a claimant's pre-injury earning experience." *Colpetzer v. Workers' Comp. Appeal Bd. (Standard Steel)*, 582 Pa. 295, 313, 870 A.2d 875, 886 (2005) (citation omitted). "The overall legislative purpose of Section 309 is to provide an accurate measurement of the AWW." *Lahr Mech. v. Workers' Compensation Appeal Board (Floyd)*, 933 A.2d 1095, 1100 (Pa.Cmwlth.2007).

In several cases, the compensation authorities and appellate courts have treated the determination of an employee's average weekly wage as a factual issue, subject to review for support by substantial evidence.[9] Thus, in *Moore v. Workmen's Compensation Appeal Bd.*, 539 Pa. 333, 652 A.2d 802 (1995), the claimant was the sole proprietor of a home repair business. The compensation authorities determined the gross income rather than the net profit was a more accurate reflection of his earnings. After review under a substantial evidence standard, our Supreme Court affirmed.

Similarly, in *Bi–Thor Electric*, an issue was whether the claimant, who was both an employee and owner of a small corporation, had an increase in earnings that would support a suspension of benefits. The compensation authorities considered both the claimant's W–2 income and the financial records of his corporation, but ultimately decided not to rely on the corporate income in determining average weekly wage. Using the same substantial evidence standard of review which the Supreme Court followed in *Moore*, this Court affirmed.

Here, substantial evidence supports Second WCJ's findings regarding AWW. Claimant was Employer's president, director and sole shareholder. As Second WCJ found, Claimant possessed complete authority to set his own compensation and had the ability to manipulate his wage statements and tax returns.

Further, Employer's 1993 corporate return shows a shareholder's loss of $66,417. *See id.*, Schedule K–1. This loss was passed through to Claimant. *See* First

---

"The WCJ may accept or reject the testimony of any witness, including an [expert] witness, in whole or in part." *Id.* If the record contains substantial evidence supporting the WCJ's findings, they must be upheld regardless of any conflicting evidence. *Id.*

**9.** *But see Scott* (Colins, P.J.)(in *dictum* stating what constitutes an employee's average week-

ly wage is a question of law subject to review by Court); *Arthur Shelley Trucking v. Workmen's Comp. Appeal Bd. (Bregman)*, 114 Pa. Cmwlth.138, 538 A.2d 604 (1988) (Colins, J.) (in *dictum* stating same without citation). These cases were decided before the Supreme Court's decision in *Colpetzer*. To the extent they are inconsistent with that decision, they are implicitly overruled.

WCJ Ex. D–2, Claimant's 1040 (1993), Schedule E (S corporation loss of approximately $65,000 after expense deduction). Employer's return showed a gross profit for 1993 of $137,476, but also showed a net loss of $66,417.

■■■ An S corporation does not pay income tax; rather, its shareholders are taxed. *See Commonwealth v. N.I., Inc.,* 31 Pa.Cmwlth. 235, 375 A.2d 898 (1977), *aff'd,* 482 Pa. 261, 393 A.2d 653 (1978). Here, Second WCJ found, Claimant's $96,000 salary *"was paid out of an S corporation so that all income from Employer passed through to Claimant's personal tax return, since he was the sole shareholder of that corporation."* Second WCJ Op. at 5; F.F. No. 9d (emphasis added). "In addition, *[Employer] reported [a] $66,472 net loss which passed through to Claimant's 1040 for 1993." Id.* As Second WCJ found, the net of those two numbers represent Claimant's earnings from the business. *Id.*

■■■ This determination is consistent with *Moore* and *Bi–Thor Electric.* A decision as to whether a claimant's gross income or net income most accurately reflects earnings is a question of fact for the WCJ. Thus, inasmuch as it is supported by the record, we discern no error in Second WCJ's finding that Claimant's net S corporation income of $31,404 ($29,583 from Employer, and $1,821.00 from Tri–State), most accurately reflected his actual 1993 earnings for purposes of determining his pre-injury AWW. *Moore; Bi–Thor Electric.*

### C. *Pre–Injury AWW v. Post Injury Earning Capacity*

In this argument, Claimant attempts to distinguish *Moore* and *Bi–Thor Electric.* He asserts Second WCJ and the Board erred by failing to follow the distinction between calculating his pre-injury AWW, which is done at the time of the work injury, and his earning capacity on his subsequent return to work. Claimant contends that *Moore* and *Bi–Thor Electric* involved a determination of the claimants' post-injury earning capacity, not pre-injury AWW. Post-injury earning capacity, Claimant asserts, can be based on either a claimant's gross salary or net profit shown on his tax return. Conversely, a claimant's AWW must be calculated in accord with Section 309 of the Act.

Employer counters that the distinction between pre-injury AWW and post-injury earning capacity is irrelevant inasmuch as Claimant returned to his pre-injury position. *Contrast Moore* (claimant injured while working for his employer later opened his own business). Rather, Employer asserts, the objective under Section 309 is to determine the claimant's actual pre-injury earnings.

This Court recently addressed the computation of AWW for a claimant with concurrent employment. *Weissman v. Workers' Comp. Appeal Bd. (Podiatry Care Ctr., P.C.),* 878 A.2d 953 (Pa.Cmwlth.2005). First, the physician claimant was both the sole shareholder and an employee of an S corporation. Second, he was self-employed as a sole proprietor. The Court discussed both pre-injury and post-injury AWW. The Court concluded that claimant's self-employment earnings were properly excluded from calculation of his pre-injury AWW. Relying on the "economic reality" analysis of *Colpetzer,* the Court concluded that the level of pre-injury self-employment income should also be excluded from calculation of his post-injury AWW, so that only changes in that baseline were considered.

The significance of *Weissman* for current purposes is two-fold. Primarily, it adopts the "economic reality" analysis for questions of calculating AWW. Further, it encourages consistent treatment of income for purposes of calculating both pre-injury and post-injury AWW. Applying these

principles from *Weissman* here, we reject Claimant's arguments on this issue. We discern no error in the approach of Second WCJ, which sought to evaluate the reality of Claimant's pre-injury economic position. Also, no error of law is present in calculating pre-injury and post-injury AWW in a consistent manner.

■ Moreover, Claimant refused to produce his complete tax records, including the actual W–2's he attached to his 1993 personal tax returns. Where, as here, a claimant fails to present credible evidence of his actual earnings, the WCJ may rely on evidence of the claimant's actual earnings provided by the employer's expert. *Rossi v. Workmen's Comp. Appeal Bd. (City of Hazleton)*, 164 Pa.Cmwlth.233, 642 A.2d 1153 (1994). By doing so under these circumstances, Second WCJ did not violate Section 309 of the Act.

### D. Realistic Measure of Earnings

In his final argument, Claimant, citing *Colpetzer*, asserts Second WCJ's calculation is not an accurate or realistic measure of his AWW. Rather, Claimant asserts the WCJ erroneously elevated accounting form over substance.

In support, Claimant again points out he actually received a $96,000 salary from Employer and paid various taxes on it. He reiterates his arguments that Section 309 of the Act and Section 3401 of the Internal Revenue Code refer to gross wages, not taxable income.

Employer counters that the revised $615.38 AWW is an accurate and realistic measure of Claimant's 1993 earnings. The intention of Section 309 of the Act, Employer asserts, is to establish a baseline figure from which benefits are calculated that reasonably reflects the reality of Claimant's pre-injury earning experience. *Triangle Bldg. Ctr. v. Workers' Comp. Appeal Bd. (Linch)*, 560 Pa. 540, 746 A.2d 1108 (2000); *Lahr Mech.*

In support of its position, Employer cites Claimant's "Wage History," an exhibit attached to Claimant's First Expert's deposition. *See* R.R. at 361a. This exhibit, which recaps Claimant wage history from 1990 though 1999, supports Second WCJ's findings. For 1993, it states:

| | |
|---|---|
| Per SS Earnings Report | $96,000 |
| [Employer] | – $66,417 |
| Net [Employer] earnings | $29,583 |
| [Mullen/Laughead Radiator] | [N/A] |
| [Tri-State] | $ 1,821.... |
| Net [Claimant] earnings | $31,404 |

R.R. at 361a.

Employer further argues the record shows Claimant's sole income was his business income. Thus, Claimant's wages are limited to the net profits earned by his corporation. *Cf. Weissman* (in determining the claimant's pre-injury AWW, the WCJ properly used the wages the claimant earned from his S corporation, *which represented the profits of the corporation*).

We agree. The record did not show any income other than Claimant's business income from his S corporations, Employer and Tri–State. Pursuant to the Internal Revenue Code, Employer's profits and losses passed through to Claimant as sole shareholder. 26 U.S. § 1366. As such, Second WCJ did not err or abuse her discretion by subtracting Claimant's net business losses from his W–2 gross earnings from Employer, which yielded a net business income of $31,404.

For these reasons, Claimant's wages are most accurately and realistically reflected by his 1993 net business income. Discerning no error, we affirm the Board's order.

### ORDER

AND NOW, this 3rd day of April, 2008, the order of the Workers' Compensation Appeal Board is **AFFIRMED.**