Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/03/2020 09:05 AM CST

TERRY BORTOLOTTI, APPELLEE AND CROSS-APPELLANT, V.
UNIVERSAL TERRAZZO AND TILE COMPANY AND
ACUITY INSURANCE COMPANY, APPELLANTS
AND CROSS-APPELLEES, AND COLUMBIA
INSURANCE GROUP, APPELLEE.

___ N.W.2d ___

Filed October 11, 2019.    No. S-17-1024.

1. **Workers' Compensation: Evidence: Appeal and Error.** The findings of fact made by the Nebraska Workers' Compensation Court will not be set aside on appeal unless clearly wrong. However, where there is not sufficient competent evidence to support an award, an appellate court must modify, reverse, or set aside the award.

2. **Workers' Compensation: Wages: Appeal and Error.** The determination of average weekly wage is a mixed question of fact and law. To the extent the determination involves a question of fact, the Workers' Compensation Court's factual findings will not be set aside unless clearly wrong; to the extent a question of law is involved, an appellate court is obligated to make its own determination.

3. **Pleadings.** An amended pleading supersedes the original pleading, whereupon the original pleading ceases to perform any office as a pleading.

4. **Pleadings: Proof.** The pleadings alone are not proof but mere allegations of what the parties expect the evidence to show.

5. **Statutes.** Statutory language is to be given its plain and ordinary meaning.

6. **Workers' Compensation.** The Nebraska Workers' Compensation Act should be construed liberally to carry out its spirit and beneficent purposes.

7. **Workers' Compensation: Corporations: Words and Phrases.** Net profits or net income of a subchapter S corporation do not necessarily qualify as "wages" under Neb. Rev. Stat. § 48-126 (Reissue 2010).

- 220 -

Nebraska Supreme Court Advance Sheets
304 Nebraska Reports
BORTOLOTTI v. UNIVERSAL TERRAZZO & TILE CO.
Cite as 304 Neb. 219

8. **Workers' Compensation: Corporations: Employer and Employee: Wages: Words and Phrases.** "Wages" under Neb. Rev. Stat. § 48-126 (Reissue 2010) do not include payments received solely because of the recipient's status as an S corporation shareholder. Rather, "wages" under § 48-126 are compensation for the recipient's activities as a corporate employee.

9. ____: ____: ____: ____: ____. The determination of "wages" under Neb. Rev. Stat. § 48-126 (Reissue 2010) for an employee-shareholder of a subchapter S corporation is a fact-specific inquiry.

10. **Workers' Compensation: Evidence: Appeal and Error.** When testing the sufficiency of the evidence to support findings of fact made by the Workers' Compensation Court trial judge, the evidence must be considered in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the successful party will have the benefit of every inference reasonably deducible from the evidence.

11. **Workers' Compensation: Appeal and Error.** On appellate review, the factual findings made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong.

Petition for further review from the Court of Appeals, Moore, Chief Judge, and Bishop and Arterburn, Judges, on appeal thereto from the Workers' Compensation Court, Julie A. Martin, Judge. Judgment of Court of Appeals affirmed in part, and in part reversed and remanded with direction.

John W. Iliff and Adam J. Wachal, of Gross & Welch, P.C., L.L.O., for appellants.

John F. Thomas and Jay D. Koehn, of McGrath, North, Mullin & Kratz, P.C., L.L.O., for appellee Terry Bortolotti.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

## I. INTRODUCTION

On appeal from the Nebraska Workers' Compensation Court's award to Terry Bortolotti, the Nebraska Court of Appeals

- 221 -

Nebraska Supreme Court Advance Sheets
304 Nebraska Reports
BORTOLOTTI v. UNIVERSAL TERRAZZO & TILE CO.
Cite as 304 Neb. 219

reduced his weekly income benefit from the maximum to the minimum and eliminated the award of out-of-pocket medical expenses.[1] On further review, we uphold the reduced weekly benefit but reinstate the medical expense award.

The income benefit depends on the correct determination of Bortolotti's average weekly wage, which the compensation court erroneously based on a superseded pleading. In a matter of first impression, we address the definition of "wages" where the worker is both an employee and a shareholder of a subchapter S corporation.

Regarding Bortolotti's medical expenses, the Court of Appeals failed to give his testimony the inferences mandated by the deferential standard of review.

## II. BACKGROUND

### 1. Trial Proceedings

Bortolotti worked in a family business, Universal Terrazzo and Tile Company (Universal), for over 30 years as an installer of terrazzo tile and fabricator and installer of granite. In 2011, Bortolotti became the sole stockholder and the president of Universal—a subchapter S corporation. Universal had at least 15 employees. As president, Bortolotti spent 60 percent of his time performing office and managerial work as opposed to physical labor. While he was president, Universal changed workers' compensation insurance providers from Columbia Insurance Group to Acuity Insurance Company.

The injury at issue in this appeal occurred in June 2013. Bortolotti's operative petition for workers' compensation benefits alleged weekly earnings of $3,625 at the time of the injury. Universal and Acuity Insurance Company denied the allegation. Henceforth, we collectively refer to Universal and Acuity Insurance Company as "Universal." We set forth additional facts in our analysis.

---

[1] *Bortolotti v. Universal Terrazzo and Tile Co.*, No. A-17-1024, 2019 WL 446630 (Neb. App. Feb. 5, 2019) (selected for posting to court website).

- 222 -

Nebraska Supreme Court Advance Sheets
304 Nebraska Reports
BORTOLOTTI v. UNIVERSAL TERRAZZO & TILE CO.
Cite as 304 Neb. 219

The compensation court determined that Bortolotti sustained a compensable injury. It specifically found Bortolotti to be a credible witness. The compensation court had difficulty determining Bortolotti's average weekly wage due to a lack of exhibits. Based on an allegation in a superseded pleading, the court held that Bortolotti's average weekly wage was $1,399.45, entitling him to the maximum compensation rate of $728 per week.

With regard to past medical expenses, the compensation court stated that it was unable to use an exhibit offered by Bortolotti, because it did not comply with a court rule. But the court awarded Bortolotti $9,849.38—the amount that he testified he personally paid for his medical expenses and which was itemized in greater detail on the exhibit he offered.

Universal appealed, and Bortolotti cross-appealed. Universal challenged, among other things, the calculation of Bortolotti's average weekly wage and the award of out-of-pocket medical expenses.

### 2. Court of Appeals' Decision

The Court of Appeals affirmed the compensation court's award as modified. It noted that documents establishing Bortolotti's 2013 income were records in his control and that he did not produce any such documentation. The Court of Appeals concluded that the compensation court erred in determining Bortolotti's average weekly wage from the allegations in his petition, noting that Universal denied the allegations. Because Universal adduced evidence that Bortolotti's 2013 wages were $3,950, the Court of Appeals determined that Bortolotti should have been awarded the minimum income benefit of $49 per week under Neb. Rev. Stat. § 48-121.01 (Reissue 2010).

The Court of Appeals eliminated the award for Bortolotti's out-of-pocket medical expenses. It agreed with Universal that because the compensation court did not rely on the exhibit offered by Bortolotti, it had no basis to award the $9,849.38 in expenses.

Bortolotti filed a petition for further review, which we granted.

### III. ASSIGNMENTS OF ERROR

Bortolotti assigns two errors. He alleges that the Court of Appeals erred by substituting its own judgment for that of the compensation court in (1) failing to give him the benefit of all factual inferences when it reduced his average weekly wage and (2) finding that he failed to prove entitlement to recover his out-of-pocket medical expenses.

### IV. STANDARD OF REVIEW

[1] The findings of fact made by the compensation court will not be set aside on appeal unless clearly wrong.[2] However, where there is not sufficient competent evidence to support an award, an appellate court must modify, reverse, or set aside the award.[3] These standards are central to our review, but we set forth other standards where applicable.

### V. ANALYSIS

#### 1. Average Weekly Wage

#### (a) Standard of Review

Our case law regarding whether determination of average weekly wage is a question of law or fact or both is muddled. Initially, we recognized it as a mixed question of fact and law.[4] In that case, we stated that "[t]he formula for computing the average weekly wage depends upon whether plaintiff was engaged in an occupation involving seasonal employment or nonseasonal employment."[5] When we next considered determination of average weekly wage, we stated that it was

---

[2] See *Hare v. Watts Trucking Service*, 220 Neb. 403, 370 N.W.2d 143 (1985). See, also, Neb. Rev. Stat. § 48-185 (Reissue 2010).

[3] *Hare v. Watts Trucking Service, supra* note 2.

[4] *Elrod v. Prairie Valley*, 214 Neb. 697, 335 N.W.2d 317 (1983).

[5] *Id.* at 698, 335 N.W.2d at 318.

"essentially" a question of fact.[6] Unsurprisingly, the next time the issue arose, we treated it as a factual question, stating that the trial court's factual finding as to average weekly wage was not clearly wrong.[7] Nine months later, the Court of Appeals addressed the question of what is included within the word "wages" as a factual one.[8]

Our decision in *Hull v. Aetna Ins. Co.*[9] appears to have created confusion. We stated:

> We note that the determination of the definition of the average weekly wage of a self-employed claimant is a question of law. An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. [Citations omitted.] Thus, we are obligated to clarify the meaning of the term "business expenses" in our previous holding.[10]

This is a correct statement as to the *definition* of such wage. Importantly, we did *not* say the *determination* of average weekly wage is a question of law. The Court of Appeals next confronted the issue and, without citing *Hull*, opined that the trial court's determination of average weekly wage was a question of fact.[11]

Since then, published Nebraska appellate cases have uniformly stated that the determination of how the average weekly wage of a workers' compensation claimant should be calculated is a question of law. It began with *Harmon v. Irby Constr.*

---

[6] *Clifford v. Harchelroad Chevrolet*, 229 Neb. 78, 80, 425 N.W.2d 331, 332 (1988).

[7] See *McGowan v. Lockwood Corp.*, 245 Neb. 138, 511 N.W.2d 118 (1994).

[8] *Logan v. Rocky Mountain Rental*, 3 Neb. App. 173, 524 N.W.2d 816 (1994).

[9] *Hull v. Aetna Ins. Co.*, 249 Neb. 125, 541 N.W.2d 631 (1996).

[10] *Id.* at 131, 541 N.W.2d at 634-35.

[11] See *McGinnis v. Metro Package Courier*, 5 Neb. App. 538, 561 N.W.2d 587 (1997).

*Co.*,[12] where we proclaimed: "The determination of how the average weekly wage of a workers' compensation claimant should be calculated is a question of law. *Hull v. Aetna Ins. Co.*, 249 Neb. 125, 541 N.W.2d 631 (1996)." But, as set forth above, that does not accurately recite what we said in *Hull*. It snowballed from there. We cited *Harmon* in *Ramsey v. State*.[13] The Court of Appeals then cited *Ramsey* in two cases,[14] and we cited *Ramsey* in *Mueller v. Lincoln Public Schools*.[15] In our most recent case to address determination of average weekly wage,[16] we cited *Mueller*.

[2] Having traced the jurisprudential underpinnings regarding the standard of review, we believe our original iteration to be correct: The determination of average weekly wage is a mixed question of fact and law. To the extent the determination involves a question of fact, the compensation court's factual findings will not be set aside unless clearly wrong; to the extent a question of law is involved, we are obligated to make our own determination.[17]

### (b) Additional Facts

An amended petition alleged an average weekly wage of $1,399.45 in June 2013. But a second amended petition and the third amended petition—the operative petition—alleged weekly earnings of $3,625 at the time of the June 2013 injury. In Universal's respective answers to each of these pleadings, it denied the allegation of average weekly wage.

---

[12] *Harmon v. Irby Constr. Co.*, 258 Neb. 420, 429, 604 N.W.2d 813, 820 (1999).

[13] *Ramsey v. State*, 259 Neb. 176, 609 N.W.2d 18 (2000).

[14] See, *Griffin v. Drivers Mgmt., Inc.*, 14 Neb. App. 722, 714 N.W.2d 749 (2006); *Arbtin v. Puritan Mfg. Co.*, 13 Neb. App. 540, 696 N.W.2d 905 (2005).

[15] *Mueller v. Lincoln Public Schools*, 282 Neb. 25, 803 N.W.2d 408 (2011).

[16] *Becerra v. United Parcel Service*, 284 Neb. 414, 822 N.W.2d 327 (2012).

[17] See *Elrod v. Prairie Valley, supra* note 4.

- 226 -

Nebraska Supreme Court Advance Sheets
304 Nebraska Reports
BORTOLOTTI v. UNIVERSAL TERRAZZO & TILE CO.
Cite as 304 Neb. 219

During trial, counsel for each party referenced figures contained on a tax return for Bortolotti, but documents containing such figures are not in our record. Our record contains only a 2013 "Schedule E," titled "Income From Passthrough Statement," which showed self-employment wages of $3,950 and qualified production activities income of $186,783. Additional information can be gleaned from the following colloquy between Bortolotti and his counsel:

Q [by counsel for Bortolotti]. Okay. All right. Let's talk about your average weekly wage.

Now, in looking at your tax return, I see that you were the —

Did Universal . . . file a 2013 tax return?

A [by Bortolotti]. Yes.

Q. And it shows that the — that under your —

That was a joint tax return with you and your wife; correct?

A. Yes.

Q. And under Item 17, it shows rental real estate, royalties, partnerships, S Corporations, trusts, attached Schedule E. And that number is 198,873.

Is that the income that the corporation would have received from the work for 2013?

A. Yes.

Later, during cross-examination, the following questions and answers ensued:

Q [by counsel for Universal]. Now, there was some questions about your tax return.

On your tax return, there's also a line for wages; correct?

A [by Bortolotti]. Yes.

Q. And you and your wife were wage earners at Universal . . . ?

A. Yes.

Q. And you put on your Form 1040 that you submitted to the Internal Revenue Service that you and your wife had wages of $12,000 in 2013.

- 227 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
304 NEBRASKA REPORTS
BORTOLOTTI v. UNIVERSAL TERRAZZO & TILE CO.
Cite as 304 Neb. 219

Do you recall that?

A. Yes.

Bortolotti believed the $12,000 in wages to be his wife's wages. According to Bortolotti, he did not receive a salary and he considered his wage to be whatever tax returns showed the corporation's net amount to be. Bortolotti also testified that he took a weekly draw of $3,625 from the corporation's income of $198,873.

Universal submitted a document containing its calculation of Bortolotti's average weekly wage. The document showed six payments in 2013 totaling $1,350: five made in January and February in the amount of $250 each and one payment of $100 in June. Universal thus calculated Bortolotti's average weekly wage as "$1,350.00 ÷ 26 weeks = $51.92." Another exhibit, summarizing a payroll journal, showed 32 payments to Bortolotti during 2013 which totaled $3,950. Bortolotti testified that these exhibits were not accurate records of his weekly income.

The compensation court recognized that Bortolotti had the burden to establish his average weekly wage. The court then explained the difficulty it encountered in determining Bortolotti's average weekly wage:

> The Court spent a considerable amount of time on this issue, more time than it should have. The lack of exhibits left the Court with a formidable and difficult task. Clearly, [Bortolotti] should have provided better evidence. Without tax returns, the Court was unable to verify if business expenses had been properly deducted from the company's gross earnings he relied upon. . . . A simple mathematical calculation did not substantiate the weekly draw testified to ($198,873/52 weeks=$3,824.48), leaving the Court to question his testimony on this issue. On the other hand, the Court does not find [Universal's] calculation to represent his correct earnings either. The only consistent figure, to some extent, that the Court found came from the pleadings. His first two Petitions alleged

- 228 -

Nebraska Supreme Court Advance Sheets
304 Nebraska Reports
BORTOLOTTI v. UNIVERSAL TERRAZZO & TILE CO.
Cite as 304 Neb. 219

a weekly wage of $1,300.00 and the Third Amended Petition alleged the more specific number of $1,399.45. Accepting the allegations in the pleadings as true and not being sufficiently persuaded the amount is incorrect, the Court holds that [Bortolotti's] average weekly wage on June 13, 20l3, was $1,399.45.

### (c) Discussion

An award of the compensation court may be modified if the findings of fact by the compensation court do not support the order or award.[18] We agree with the Court of Appeals that the compensation court erred in determining Bortolotti's average weekly wage was $1,399.45.

[3,4] No evidence supported this amount. Although one of Bortolotti's earlier petitions alleged this amount, Universal's answer denied that allegation. Thus, there was no admission derived from that pleading, and certainly no judicial admission.[19] An amended pleading supersedes the original pleading, whereupon the original pleading ceases to perform any office as a pleading.[20] Essentially, the allegation of $1,399.45 ceased to exist upon the filing of subsequent amended petitions. So when the compensation court found that "the Third Amended Petition alleged the more specific number of $1,399.45," it clearly erred for two reasons. First, the number came from the ineffective, superseded pleading. But there was a more fundamental flaw. The pleadings alone are not proof but mere allegations of what the parties expect the evidence to show.[21] Because the finding was based solely upon a pleading, which was not evidence, the finding had literally no evidence to support it. This finding was clearly wrong. Thus, the Court of

---

[18] See *Martinez v. CMR Constr. & Roofing of Texas*, 302 Neb. 618, 924 N.W.2d 326 (2019).

[19] See *Cook v. Beermann*, 202 Neb. 447, 276 N.W.2d 84 (1979).

[20] *deNourie & Yost Homes v. Frost*, 295 Neb. 912, 893 N.W.2d 669 (2017).

[21] *In re Estate of Radford*, 297 Neb. 748, 901 N.W.2d 261 (2017).

Appeals was required to reverse or modify that portion of the award. We now review its determination.

In determining average weekly wage, neither the compensation court nor the Court of Appeals discussed any significance of Universal's status as a subchapter S corporation. The compensation court, citing *Hull v. Aetna Ins. Co.*,[22] stated merely that "[a] self-employed claimant's average weekly wage under Neb. Rev. Stat. § 48-121(2) shall be based upon the claimant's gross income less business expenses, i.e., net income." During oral arguments, counsel for the parties agreed that *Hull* does not apply here. The Court of Appeals recognized that Bortolotti was the sole shareholder and an employee of Universal, but its analysis did not mention the corporation's status as an S corporation.

Universal's status as an S corporation with Bortolotti as its sole shareholder is a complicating feature. "Subchapter S is a tax status designed to tax corporate income on a pass-through basis to shareholders of a small business corporation."[23] A subchapter S corporation is not taxed on its earnings; rather, the income, expenses, and other tax items ""pass through"" and are taxable to or deductible by shareholders.[24] In a child support case, after recognizing that income for the purpose of child support is not synonymous with taxable income, we stated that the owner of a wholly owned S corporation is self-employed within the meaning of the child support guidelines.[25] But for tax purposes, self-employed individuals and S corporation shareholders are treated differently.

Whether the profits of an S corporation should be included as wages in determining average weekly wage is an issue of first impression in Nebraska. A treatise on workers' compensation law does not provide clear guidance:

---

[22] *Hull v. Aetna Ins. Co.*, 247 Neb. 713, 529 N.W.2d 783 (1995).

[23] *Gase v. Gase*, 266 Neb. 975, 983, 671 N.W.2d 223, 230 (2003).

[24] *Id.*

[25] See *Gase v. Gase, supra* note 23.

Generally, profits from a business, whether commercial or farm, are not considered as wages for purposes of establishing average wage. But close questions have arisen in connection with corporate officers, who may also be stockholders, whose remuneration is not fixed but depends to some extent on the fortunes of the business. One court has held that the employee's share of profits was not the correct measure, but that the test should be the wage of another employee performing similar duties.[26] A different resource states:

If a corporate officer or stockholder is a wage-earning corporate employee, and the wages reflect services rendered, presumably the wages paid would normally constitute the basis for computing workers' compensation benefits. It has been said that where an officer of a corporation is injured while performing the duties of an ordinary employee, compensation for the injury must be based on wages received by him in the capacity of such employee. . . .

. . . A stockholder's share in the corporate profits cannot be deemed wages for workers' compensation purposes.[27]

Legal commentators agree that profits from the injured worker's own business enterprise are not considered in determining the average wage unless they are almost entirely the direct result of the worker's personal management and endeavor.[28]

Decisions from other jurisdictions provide some insight. In a case where an injured employee and three others each held a 25-percent interest in a closely held corporation and the injured employee received no wages from the company, the Tennessee

_____

[26] 8 Arthur Larson et al., Larson's Workers' Compensation Law § 93.01[2][e] at 93-26 to 93-27 (2017).

[27] 2 John P. Ludington et al., Modern Workers Compensation § 201:15 at 25-26 (Matthew J. Canavan & Donna T. Rogers eds., 1993).

[28] See, 82 Am. Jur. 2d *Workers' Compensation* § 411 (2013); 100 C.J.S. *Workers' Compensation* § 592 (2013).

Supreme Court reasoned that the employee's earnings should be based on the compensation paid by the same company to another employee performing the same or similar duties.[29] A Virginia appellate court held that profits from a sole proprietorship or a wholly owned S corporation were not earnings that could be used to calculate the average weekly wage.[30] In a New York case where the claimant was the owner, president, and sole shareholder of an S corporation and also performed work as a mechanic, the court affirmed a determination that the claimant's average weekly wage was $500 per week based on payroll entries indicating those weekly payments.[31]

In a Pennsylvania workers' compensation case,[32] the commonwealth court considered what the term "wage" meant in the context of an injured worker's dual role as employee and as president and sole owner of an S corporate employer. Viewing the controversy as an issue of fact, the court stated that substantial evidence supported the findings below: that the net of the worker's $96,000 salary and the corporation's $66,472 net loss represented the worker's earnings from the business. The court observed that "[i]n several cases, the compensation authorities and appellate courts have treated the determination of an employee's average weekly wage as a factual issue, subject to review for support by substantial evidence."[33] And its discussion of two earlier cases showed that the result was driven by the substantial evidence standard. In one case,[34] the claimant was the sole proprietor of a home repair business and it was determined that gross income rather than net profit was a more accurate reflection of the claimant's earnings. In the

---

[29] *P & L Const. Co., Inc. v. Lankford*, 559 S.W.2d 793 (Tenn. 1978).

[30] *Smith v. Robert W. Smith*, 32 Va. App. 242, 527 S.E.2d 463 (2000).

[31] *Joyce v. European Auto Service*, 226 A.D.2d 952, 641 N.Y.S.2d 175 (1996).

[32] *Mullen v. W.C.A.B. (Mullen's Truck)*, 945 A.2d 813 (Pa. Commw. 2008).

[33] *Id.* at 818.

[34] *Moore v. W.C.A.B.*, 539 Pa. 333, 652 A.2d 802 (1995).

other case,[35] the claimant was both an employee and an owner of a small corporation and compensation authorities declined to rely on corporate income in determining average weekly wage. The court explicitly recognized that "[a] decision as to whether a claimant's gross income or net income most accurately reflects earnings is a question of fact for the [workers' compensation judge]."[36]

An Illinois case relied in part on a state statute defining average weekly wage to mean actual earnings.[37] In that case, an employee sustained an injury while working as a refuse scavenger for a village. While working for the village, the employee was also the president and sole shareholder of a landscaping business, which was an S corporation. The employee received no wages from the corporation but did receive income in the form of net profits. The arbitrator did not include such net profits, stating that salary, wages, or earnings had never been liberally construed to include net profits. It found that the employee's earnings during the period of the injury were $22,679.80 and that his average weekly wage was $436.15. Both parties appealed to an industrial commission, which affirmed the judgment as modified. On further appeal, the employee argued that the commission erred in failing to include the income generated by his landscaping business in calculating his average weekly wage. The appellate court held: "[A] claimant's business income should not be included in the calculation of average weekly wage. We would be legislating from the bench if we were to hold that 'actual earnings' should be construed to include net profit."[38]

[5,6] Of course, fundamentally, this is a question of statutory interpretation. Two principles govern. First, statutory

---

[35] *Bi-Thor Elec., Inc. v. W.C.A.B.*, 702 A.2d 1145 (Pa. Commw. 1997).

[36] *Mullen v. W.C.A.B. (Mullen's Truck), supra* note 32, 945 A.2d at 819.

[37] *Paoletti v. Industrial Com'n*, 279 Ill. App. 3d 988, 665 N.E.2d 507, 216 Ill. Dec. 447 (1996).

[38] *Id.* at 996, 665 N.E.2d at 512, 216 Ill. Dec. at 452.

language is to be given its plain and ordinary meaning.[39] Second, the Nebraska Workers' Compensation Act should be construed liberally to carry out its spirit and beneficent purposes.[40]

Thus, we turn to our statutory definition of "wages." Neb. Rev. Stat. § 48-126 (Reissue 2010) provides in relevant part:

Wherever in the Nebraska Workers' Compensation Act the term wages is used, it shall be construed to mean the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident. . . . In continuous employments, if immediately prior to the accident the rate of wages was fixed by the day or hour or by the output of the employee, his or her weekly wages shall be taken to be his or her average weekly income for the period of time ordinarily constituting his or her week's work, and using as the basis of calculation his or her earnings during as much of the preceding six months as he or she worked for the same employer, except as provided in sections 48-121 and 48-122. The calculation shall also be made with reference to the average earnings for a working day of ordinary length and exclusive of earnings from overtime, except that if the insurance company's policy of insurance provides for the collection of a premium based upon such overtime, then such overtime shall become a part of the basis of determining compensation benefits.

Like the conclusion reached by the Illinois court, we cannot read "wages" in § 48-126 to include net profit for an employee of an S corporation.

Bortolotti asks us to find, as the compensation court did, that he was entitled to the statutory maximum weekly income benefit[41] of $728. He directs us to the Schedule E showing

---

[39] *Christine W. v. Trevor W.*, 303 Neb. 245, 928 N.W.2d 398 (2019).

[40] *Krause v. Five Star Quality Care*, 301 Neb. 612, 919 N.W.2d 514 (2018).

[41] See § 48-121.01(1)(b) and Neb. Rev. Stat. § 48-121.02 (Reissue 2010).

"Qualified production activities income" of \$186,783 and to his testimony that he took a weekly draw from the corporation of \$3,625 and that his tax return showed a net income for Universal of \$198,873. We note that the compensation court did not accept this evidence. The court stated that it was unable to verify if business expenses had been properly deducted from the company's gross earnings due to the absence of tax returns in the record. It also specifically "question[ed]" Bortolotti's testimony regarding his weekly draw.

The compensation court also rejected evidence that Bortolotti's earnings for 2013 were \$3,950. It stated that it did "not find [Universal's] calculation to represent [Bortolotti's] correct earnings" and that it did "not believe that [Bortolotti] only earned \$3,950.00 in 2013." This disbelief is understandable. After all, he was the president and sole shareholder of a company that appeared to be profitable.

[7-9] Net profits or net income of a subchapter S corporation do not necessarily qualify as "wages" under § 48-126. This statute requires us to focus on the "money rate at which the service rendered is recompensed."[42] Where both the corporation and the shareholder-employee expressly treat payments as wages for all purposes, including for purposes of income and employment taxes, the evidence may be clear. But, as we have explained, "wages" under § 48-126 do not include payments received solely because of the recipient's status as an S corporation shareholder. Rather, "wages" under § 48-126 are compensation for the recipient's activities as a corporate employee. The determination of "wages" under § 48-126 for an employee-shareholder of a subchapter S corporation is a fact-specific inquiry.

Two of our prior decisions provide only limited guidance. In *Bituminous Casualty Corp. v. Deyle*,[43] the claimant was the president, general manager, and majority stockholder of a

---

[42] § 48-126.

[43] *Bituminous Casualty Corp. v. Deyle*, 225 Neb. 82, 402 N.W.2d 859 (1987).

construction company. The claimant received no cash wages or bonus from the company, but he kept profits from buying properties constructed by the company at cost and reselling or leasing them. The claimant did not report those profits as income, and the company did not report the benefits as salary paid to the claimant. We determined that no "wages" were paid and that thus, the claimant was not entitled to receive any compensation other than the payment of his medical bills. On the other hand, in *Hull v. Aetna Ins. Co.*,[44] we stated that a self-employed claimant's average weekly wage should be based on net income. We subsequently affirmed a review panel's determination that the self-employed individual's average weekly wage was $123.44, based on net business income of $6,419.[45] This precedent does not permit us to articulate any bright-line rule regarding an employee-shareholder of a subchapter S corporation.

Competent evidence in the record supports the Court of Appeals' determination of average weekly wage. The Court of Appeals determined Bortolotti's average weekly wage to be $49—the minimum weekly income benefit provided by statute[46]—based on Universal's evidence that Bortolotti earned $3,950 in wages in 2013. That amount is supported by the record—the Schedule E from Bortolotti's 2013 tax return showed wages of $3,950, which was the same amount of total payments to Bortolotti shown on Universal's payroll journal for 2013. As the parties recognized, Bortolotti had the burden to establish his average weekly wage from this S corporation. Thus, he was required to provide evidence differentiating his wages as a corporate employee from his profits as a corporate shareholder. He failed to do so, and Universal presented competent evidence respecting this distinction. We affirm

---

[44] *Hull v. Aetna Ins. Co., supra* note 22.

[45] See *Hull v. Aetna Ins. Co., supra* note 9.

[46] § 48-121.01(2).

the Court of Appeals' determination that Bortolotti's average weekly wage benefit was $49.

## 2. OUT-OF-POCKET MEDICAL EXPENSES

### (a) Standard of Review

[10] When testing the sufficiency of the evidence to support findings of fact made by the Workers' Compensation Court trial judge, the evidence must be considered in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the successful party will have the benefit of every inference reasonably deducible from the evidence.[47]

[11] On appellate review, the factual findings made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong.[48]

### (b) Additional Facts

Exhibit 41, offered by Bortolotti, was a one-page exhibit which listed the date, provider, cost, and payer of various medical bills. The court received the exhibit into evidence without objection. During trial, the following colloquy occurred between Bortolotti and his counsel:

Q. All right. Now, have you then put together in Exhibit 41 the monies that have been made paid to [a doctor's] office by Columbia Insurance, the bills that have been paid by United Health and then the bills that have been paid by you for your left shoulder injury?

A. Yes.

Q. And so you've paid, according to this, $9,849.38?

A. Yes.

Universal did not inquire about these out-of-pocket expenses on cross-examination.

---

[47] See *Krause v. Five Star Quality Care, supra* note 40.

[48] *Id.*

The compensation court stated that "Although offered [Bortolotti's] own itemization of claimed expenses and summaries of payments made by third parties . . . , the Court finds it is unable to use these for entering an award in favor of [Bortolotti] as to the payment of medical expenses." The court cited Workers' Comp. Ct. R. of Proc. 10 (2018), which called for itemized bills. The court's award stated: "[Bortolotti] testified that he personally paid $9,849.38 for his medical expenses, which was itemized in greater detail in Exhibit 41. He should be reimbursed by [Universal] for his out-of-pocket expenses."

The Court of Appeals reasoned that because the compensation court rejected exhibit 41 and Bortolotti "based his answer 'according to' exhibit 41," the compensation court had no basis to make the award of out-of-pocket medical expenses.[49]

### (c) Discussion

The premise of the Court of Appeals' conclusion is that the second question posed to Bortolotti was based solely on exhibit 41. We disagree.

On this issue, the appellate court failed to apply the deferential standard of review, which required it to view the testimony most favorably to Bortolotti and to give him the benefit of every inference reasonably deducible from the evidence. The colloquy between Bortolotti and his counsel showed that Bortolotti "put together" exhibit 41, which raised an inference that he had personal knowledge of the amounts shown thereon. In other words, the second question and answer must be viewed deferentially in the context of the preceding question and answer.

The compensation court relied on Bortolotti's testimony in finding that he paid $9,849.38 in out-of-pocket medical expenses. Viewing that testimony most favorably to Bortolotti and giving him the benefit of every reasonable inference, the

---

[49] *Bortolotti v. Universal Terrazzo and Tile Co., supra* note 1 at *8.

compensation court's factual finding was not clearly wrong. Accordingly, the Court of Appeals erred in disturbing the compensation court's award of out-of-pocket expenses.

## VI. CONCLUSION

The compensation court's average weekly wage determination, based on an allegation in an inoperative pleading, was clearly wrong. Because the Court of Appeals' determination of average weekly wage was supported by competent evidence in the record, we affirm that determination.

The compensation court was not clearly wrong in finding that Bortolotti paid $9,849.38 in out-of-pocket medical expenses. We reverse the decision of the Court of Appeals in part and remand the matter with direction to affirm the compensation court's award of out-of-pocket medical expenses.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTION.